**In re HOME–STAKE PRODUCTION COMPANY SECURITIES LITIGATION.**

MDL No. 153 and Civ. A. Nos. 73–C–58, 73–C–175, 73–C–227, 73–C–304, 73–C–344, 73–C–377, 73–C–382, 73–C–409, 74–C–151, 74–C–176, 74–C–178 through 74–C–181, 74–C–208, 74–C–224 through 74–C–232, 74–C–244, 74–C–278, 75–C–413, 75–C–430 through 75–C–432 and 75–C–434.

United States District Court, N. D. Oklahoma.

Aug. 6, 1975.

See also 76 F.R.D. 351.

Holliman, Langholz, Runnels & Dorwart, Fred Dorwart, David W. Holden, Tulsa, Okl., for Home-Stake and plaintiffs in 73–C–58 and 73–C–377 and defendants in 73–C–175, 73–C–227 and 73–C–382.

C. D. McDoulett, Jr., Tulsa, Okl., for Home-Stake and plaintiffs in 73–C–58 and 73–C–377.

Doerner, Stuart, Saunders, Daniel & Langenkamp, Dobie Langenkamp, Michael Lewis, Tulsa, Okl., for Streicher Broeker, et al., and for plaintiffs in 73–C–175, 73–C–227 and 74–C–181 and defendants in 73–C–58.

Jones, Givens, Brett, Gotcher, Doyle & Atkins, Phillips Breckinridge, Jack R. Givens, Tulsa, Okl., for United California Bank, et al., and plaintiffs in 73–C–175 and 73–C–227 and Halvorson, et al., and defendants in 73–C–58.

Sneed, Lang & Trotter, James C. Lang, Tulsa, Okl., for Trippet and plaintiffs in 73–C–304 and 73–C–377 and defendants in 73–C–58, 73–C–175, 73–C–227, 73–C–344, 73–C–377, 73–C–409, 74–C–151, 74–C–176, 74–C–178, 74–C–180, 74–C–181, 74–C–208, 74–C–224 through 74–C–226, 74–C–229 through 74–C–232 and 74–C–278.

Robert S. Trippet, pro se.

Hall, Estill, Hardwick, Gable, Collingswood & Nelson, Fred S. Nelson, Harry L. Seay, III, Tulsa, Okl., for Leachman, Wexler, Anderson, et al., and plaintiffs in 73–C–344, 73–C–409, 74–C–176, 74–C–178, 74–C–179, 74–C–208, 74–C–224 through 74–C–232 and 75–C–434.

Caplin & Drysdale, Peter Van N. Lockwood, John T. Shinkle, Philip T. Lacy, John F. Dienelt, Washington, D. C., for Leachman, Wexler, et al., and plaintiffs in 73–C–344, 73–C–409, 74–C–176, 74–C–178, 74–C–179 and 74–C–232.

McFarland, Kuchins & Jackson, Gary M. Caylor, San Francisco, Cal., for Home-Stake, et al., and plaintiffs in 73–C–377 and defendants in 73–C–382.

Broad, Khourie & Schulz, William A. Wineberg, Jr., San Francisco, Cal., for Anixter, et al., and plaintiffs in 73–C–382, 74–C–244 and 75–C–430 through 75–C–432 and defendants in 73–C–377.

Stephen Theoharis, Robert McCarthy, San Francisco, Cal., for Anixter and plaintiffs in 73–C–382, 74–C–244 and 75–C–430 through 75–C–432.

Stephen Rauch, Dillon & O'Brien, New York City, for Chase Manhattan Bank, et al., and plaintiffs in 74–C–151.

Gilbert, Segall & Young, Harold F. McGuire, Jr., Lowell A. Margolin, New York City, for Anderson, et al., and plaintiffs in 74–C–180, 74–C–224 through 74–C–231 and 75–C–434.

Lester A. Klaus, Oklahoma City, Okl., for Trippet and plaintiffs in 73–C–304 and defendants in 73–C–58, 73–C–175, 73–C–227, 73–C–344, 73–C–377, 73–C–409, 74–C–151, 74–C–176, 74–C–178 through 74–C–181, 74–C–208, 74–C–224 through 74–C–226, 74–C–228 through 74–C–230 and 74–C–232.

Gene Mortensen, A. F. Ringold, Rosenstein, Fist & Ringold, Tulsa, Okl., for Home-Stake and plaintiffs in 73–B–922 and defendants in 73–C–304, 73–C–377, 73–C–382 and 74–C–244.

Royce H. Savage, Tulsa, Okl., for Home-Stake and plaintiffs in 73–B–922.

Satterlee & Stephens, New York City, for Bradley, et al., and plaintiffs in 74–C–278.

Stephen R. Bell, Wilkinson, Cragun & Barker, Washington, D. C., for Glen A. Wilkinson and plaintiffs in 75–C–413.

Cayman Water Co. Ltd., Grand Cayman, Cayman Islands, British West Indies, for plaintiffs in 74–C–151.

Richard T. Sonberg and Gene Buzzard, Tulsa, Okl., for Parkhurst and plaintiffs in 74–C–151.

Sonberg & Waddel, Tulsa, Okl., for Parkhurst and plaintiffs in 74–C–151 and Sims and defendants in 73–C–377 and 73–C–382.

Patrick O. Waddel, Tulsa, Okl., for Sims and defendants in 73–C–377 and 73–C–382.

Eagleton, Eagleton & Owens, George W. Owens, Tulsa, Okl., for Kunkel Fitzgerald and defendants in 73–C–175, 73–C–377, 73–C–382, 74–C–151, 74–C–181, 74–C–224 through 74–C–226, 74–C–229, 74–C–230 and 74–C–244.

Crowe, Dunlevy, Thweat, Swinford, Johnson & Burdick, Wm. G. Paul, Harry A.

Woods, Jr., Oklahoma City, Okl., for Keplinger & Assoc., and defendants in 73–C–344, 73–C–409 and 74–C–232.

Thomas A. Landrith, Jr., pro se.

Farella, Braun & Martel, John L. Cooper, Howard M. Wexler, San Francisco, Cal., for Cross and defendants in 73–C–382.

B. Hayden Crawford, Tulsa, Okl., for Cross and defendants in 73–C–175, 73–C–377, 73–C–382, 74–C–179 through 74–C–181.

Pryor, Braun, Cashman & Sherman, New York City, for Home-Stake and plaintiffs in 74–C–151.

Rucker, Tabor, McBride & Hopkins, William D. Hunt, Truman Rucker, Donald G. Hopkins, Tulsa, Okl., for Heller & Simpson, et al., and defendants in 73–C–175, 73–C–377, 74–C–151, 74–C–180, 74–C–181, 74–C–208, 74–C–224 through 74–C–226, 74–C–228 through 74–C–231 and 74–C–244.

R. L. Davidson, Houston, Davidson, Jacoby, Main & Nelson, Tulsa, Okl., for Metcalfe and defendants in 73–C–175, 73–C–377, 73–C–382, 74–C–151, 74–C–181, 74–C–232, 74–C–278 and 74–C–383.

Charles C. Baker, Gable, Gotwals, Rubin, Fox, Johnson & Baker, James M. Sturdivant, Tulsa, Okl., for McAfee, Taft, et al., and defendants in 73–C–377, 73–C–382, 74–C–151, 74–C–176, 74–C–180, 74–C–230, 74–C–232, 74–C–244.

Lance Stockwell, Boesche, McDermott & Eskridge, Tulsa, Okl., Leon Silverman, Fried, Frank, Harris, Schriver & Jacobson, New York City, for Heller & Simpson and defendants in 73–C–175, 74–C–151, 74–C–180, 74–C–181, 74–C–208, 74–C–224 through 74–C–231 and 74–C–244.

Pray, Scott & Livingston, Roger Scott, Tulsa, Okl., for Klineman and defendants in 74–C–178.

Harry M. Crowe, Jr., Crowe & Thieman, Tulsa, Okl., for Gutelius and defendants in 73–C–175, 73–C–344, 73–C–377, 73–C–382, 74–C–151, 74–C–181, 74–C–232 and 74–C–278.

Charles W. Boand, Wilson & McIlvaine, Chicago, Ill., John L. Arrington, Jr., J.

Clarke Kendall, II, Huffman, Arrington, Scheurich & Kihle, Tulsa, Okl., for A. Anderson & Co., and defendants in 74–C–227.

Joseph A. Sharp, Best, Sharp, Thomas, Glass & Warner, Tulsa, Okl., for Landrith and defendants in 73–C–175, 73–C–304, 73–C–344, 73–C–377, 73–C–382, 73–C–409, 74–C–151, 74–C–180, 74–C–181, 74–C–224 through 74–C–232.

Roy J. Davis, James W. Shepherd, Theodore M. Elam, Andrews, Mosburg, Davis, Elam, Legg & Bixler, Oklahoma City, Okl., for Blum and defendants in 73–C–175, 73–C–377, 73–C–382, 74–C–151, 74–C–180, 74–C–181, 74–C–208, 74–C–224 through 74–C–231 and 74–C–244.

David Jackson, Schuman, Milsten & Jackson, Tulsa, Okl., R. F. Wade, Gregg & Wade, Los Angeles, Cal., for Lewis & Ganong and defendants in 73–C–175, 73–C–377, 73–C–382, 74–C–151, 74–C–180, 74–C–181, 74–C–226 through 74–C–231.

Frank E. Turner, Tulsa, Okl., for Smith and defendants in 73–C–377 and 73–C–382.

Dyer, Powers, Marsh, Turner & Powers, Tulsa, Okl., for Smith and defendants in 73–C–377, 73–C–382 and 74–C–176.

Buchanan, Tollefsen & Brazelton, Los Angeles, Cal., for Ganong and defendants in 73–C–175, 73–C–377, 73–C–382, 74–C–151, 74–C–180, 74–C–181, 74–C–227 through 74–C–232.

Ronald A. Skoller, Tulsa, Okl., for Smith and defendants in 74–C–176.

Irvine E. Ungerman, Hawley C. Kerr, Ungerman, Grabel & Ungerman, Tulsa, Okl., for Dryfoos & Co., and defendants in 74–C–178.

John B. Jarboe, Jarboe, Keefer & Barrow, Tulsa, Okl., for Home-Stake and defendants in 74–C–151.

Stan P. Doyle, Doyle & Holmes, Tulsa, Okl., for Kothe and defendants in 74–C–377 and 74–C–382.

John S. Athens and Gary H. Baker, Tulsa, Okl., for Larrabee & Foulke and defendants in 73–C–377, 73–C–382, 74–C–151, 74–C–180, 74–C–230, 74–C–232, 74–C–244 and 74–C–278.

Conner, Winters, Ballaine, Barry & McGowen, Tulsa, Okl., for Larrabee, Foulke, First Nat. Bank, Tulsa and Home-Stake and defendants in 73–C–377, 73–C–382, 74–C–151, 74–C–180, 74–C–230, 74–C–232, 74–C–244, 74–C–278 and 75–C–430.

Bruce E. Pindyck & James E. Tolan, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for Dryfoos & Co., and defendants in 73–C–382, 74–C–178 and 74–C–232.

Benjamin P. Abney, Chapel, Wilkinson, Riggs & Abney, Tulsa, Okl., for Barnett and defendants in 73–C–377 and 73–C–382.

David N. Ellenhorn, Moses & Singer, New York City, for Klineman and defendants in 73–C–377, 73–C–382 and 74–C–178.

John R. Richards, Tulsa, Okl., for McKee, Atkins and Schuler and defendants in 74–C–228.

Wm. S. Hall, John R. Woodard, III, Green, Feldman & Hall, Tulsa, Okl., for Wm. Murray, Murray, Patterson and Sharpe and defendants in 73–C–377, 73–C–382 and 74–C–231.

Thomas R. Sheridan, Simon & Sheridan, Los Angeles, Cal., for Ganong, Lewis and Ganong.

Marvin R. Barnett, pro se.

Joseph R. Roberts, Rhodes, Hieronymus, Holloway & Wilson, Tulsa, Okl., for E. M. Kunkel and defendants in 75–C–413.

James L. Kincaid, Horace D. Ballaine and James R. Ryan, Tulsa, Okl., for First Nat. Bank, Tulsa and defendants in 75–C–430.

John E. Barry, Tulsa, Okl., for Home-Stake and defendants in 74–C–151.

RULINGS ON DEFENDANTS' MOTIONS RE: (1) LIMITATIONS; (2) RULE 12; (3) MASTER'S REPORT RE DISCOVERY

BOLDT, Senior District Judge, By Designation.

I. *FACTUAL ALLEGATIONS AS-SERTED BY PLAINTIFFS*

Since all of plaintiffs'. allegations concerning the conduct and actions chargeable to Home-Stake Production Company (Home-Stake) must be taken as though they were established facts, an understanding thereof is an essential first step in considering and determining both the Limitations and Rule 12 motions of defendants. Some significant allegations of plaintiffs are now admitted or otherwise established facts. However, at the present stage of pretrial in this litigation, the following summary of the highlights alleged by plaintiffs should be considered as factual issues to ultimately be determined in trial.

The details of the early years of Home-Stake's operation are obscure, but it appears that Home-Stake began selling participatory shares in annual oil and gas drilling programs to the investing public around 1960. Beginning in 1964 and in each subsequent year, Home-Stake registered its program with the Securities and Exchange Commission (SEC) and investors were offered shares by prospectus. In addition to the prospectuses, however, Home-Stake's sales representatives distributed certain "black books" to investors in the 1964 to 1970 program years. The black books, which Home-Stake never registered with the SEC, were allegedly used by Home-Stake salesmen to convince the prospective investor that he would reap big profits from proven oil reserves and that the tax deductions for intangible drilling costs and oil depletion allowances were advantageous.

At first, Home-Stake's operation seemed successful. Home-Stake's quarterly progress reports indicated that substantial oil was being produced and early investors received large payments which were supposedly proceeds from the oil drilling program. The plaintiffs allege, however, that very little oil was being produced and that the payments came from sums of money paid for units by later investors. These payments allegedly were used for two purposes: to conceal the fact that Home-Stake was not using the investors' money to produce oil and gas and to encourage investors to increase their stakes in subsequent pro-

grams. This unlawful scheme, if established as alleged, may far exceed in extent and amount the classic "Ponzi swindle."

Nevertheless, there were some disgruntled investors who complained that their returns did not equal the amounts they expected. Home-Stake has admitted that substantial sums were paid to dissatisfied investors and that these payments were never revealed by Home-Stake publicly or in its SEC filings.

Two incidents illustrate the extent of Home-Stake's efforts to conceal its fraudulent scheme. (1) In 1968 a class action was filed against Home-Stake in the Northern District of Oklahoma. After briefing, the Court ruled that a class action be initiated and plaintiffs were ordered to prepare and submit for approval a proposed class action notice. *George H. McFadden & Bro., Inc. v. Home-Stake Production Co.,* 295 F.Supp. 590 (N.D.Okl.1968). However, before approval of the proposed notice, Home-Stake reached a settlement with the plaintiff, the plaintiff withdrew its motion for class action and the Court dismissed the action with prejudice in an unreported decision. (2) In 1970 the SEC began an investigation of Home-Stake which resulted in the SEC filing an action alleging violations of securities laws in the Home-Stake 1970 program. The SEC action was settled by a consent decree in 1971 and a rescission offer was made to all participants in the 1970 program, in which Home-Stake conceded technical violations of the securities laws, but failed to disclose that little or no oil from its prior programs had been produced, that its 1965 through 1969 programs had been oversold, or that the assets of its financial statement were nonexistent and that Home-Stake was insolvent. Through its fraudulent omissions Home-Stake was thus enabled to continue its operations and sell investment programs in 1971 and 1972.

Shortly thereafter, the fabric that held Home-Stake together began to fray. In March 1973 two investors who were dissatisfied with their investment returns and one investor who had been informed that the Internal Revenue Service was going to disallow his intangible drilling deductions filed an action in the Northern District of California on behalf of the class of all participants in all Home-Stake programs. By July 1973 the plaintiffs in that action (Anixter I) sought to inspect Home-Stake's documents and the Court ordered that they be allowed to begin discovery. At this point the pace of events accelerated. Within weeks new management took over Home-Stake and discharged Chairman Robert S. Trippet, investigators from the SEC arrived at Home-Stake's offices in Tulsa, and Home-Stake filed for reorganization under Chapter X of the Bankruptcy Act in the United States District Court for the Northern District of Oklahoma. Some actions had previously been filed in various district courts, but after the revelations and collapse of Home-Stake in September 1973 numerous other actions were filed.

In January 1974 the Judicial Panel on Multidistrict Litigation transferred several actions in this litigation to the Northern District of Oklahoma for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. In December 1974 a grand jury in Los Angeles returned indictments against thirteen ex-officers and associates of Home-Stake for alleged violations of the securities and income tax laws.

## II. *MOTIONS PER LIMITATIONS OF ACTIONS*

Ten defendants have submitted several motions to dismiss the claims of various plaintiffs on the basis of statutes of limitations defendants contend are applicable.

### A. *The Three-Year Rule*

Defendants argue that the plaintiffs' claims under §§ 11 and 12(2) of the Securities Act of 1933 for the 1964 to 1970 program years are time-barred by § 13 of the 1933 Act, 15 U.S.C. § 77m, which provides:

"No action shall be maintained to enforce any liability created under [Section 11 or 12(2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of

reasonable diligence . . .. In no event shall any such action be brought to enforce a liability created under [Section 11] more than three years after the security was bona fide offered to the public or under [Section 12(2)] more than three years after the sale."

Defendants contend that the statutory language clearly requires that an action be brought within an absolute time limit of three years from the date of offer or sale of a security. For the 1964 to 1969 program years, they maintain that plaintiffs' Section 11 claims are time-barred because they were not filed within three years of the date when the securities were bona fide offered to the public and that the Section 12(2) claims are likewise time-barred because they were not filed within three years of the date of sale of the securities.

Defendants further argue that the three-year rule bars claims under Sections 11 and 12(2) with respect to the 1970 program year for the same reasons, and that the court-ordered rescission offer of April 1971 does not extend this three-year period to these plaintiffs who did not act upon the rescission offer.

### B. *The One-Year Rule and Relation Back*

Section 13 also sets out a second test and states that an action or claim under Sections 11 and 12(2) is timely filed only if the plaintiff files his claim within one year after he discovers or with due diligence should have discovered the untrue statement or omission in the offering or sale of a security.

The attorney defendants contend that, although the question of due diligence is normally an issue of fact, the claims of certain plaintiffs should be dismissed as a matter of law based on the facts alleged in the pleadings. These defendants note that *Anixter I* was originally filed in March 1973 and contained numerous factual allegations of violations of Section 11 by other defendants. Fourteen months later, *Anixter I* was amended, naming the attorney defendants as new defendants and adding a claim based on Section 12(2). A new complaint, *Anixter II*, was filed against the attorney defendants in April 1974, thirteen months after the original *Anixter I*, which contained allegations of violations of both Sections 11 and 12(2). *Chase Manhattan* was amended to name the attorney defendants and to add a new claim based on Section 12(2). The attorney defendants argue that the amended complaints in *Anixter I* and *Chase Manhattan* and the new claims in *Anixter II* contain allegations that are substantially similar to the allegations made over one year earlier and that the actions and claims are not timely, since plaintiffs did not exercise due diligence in bringing these claims within one year of the time that the existence of fraud was first discovered or should have been discovered. (The attorney defendants do not include in this motion three named plaintiffs who were not included as plaintiffs in the original complaints).

Defendant Trippet, who was originally included as a defendant in *Anixter I* and *Chase Manhattan*, argues that the amended complaints which allege a new cause of action under Section 12(2) are barred by the one-year statute of limitations of Section 13, since the plaintiffs did not exercise due diligence in bringing these claims within the one-year period from the time that fraud was first discovered or should have been discovered.

The attorney defendants argue that the plain language of F.R.Civ.P. 15(c) does not allow the plaintiffs to "relate back" to the filing of the original actions any claims against them, because they were not originally named as defendants in those actions; and defendant Trippett argues that the plaintiffs cannot "relate back" to the date of the filing of the original action a new and different cause of action under Section 12(2).

### C. *State Statutes of Limitations*

The defendants contend that plaintiffs' actions based on Section 17 of the 1933 Act, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)–5 promulgated thereunder, the securities laws of various

states and common law fraud are governed by the application of state statutes of limitations. In general, the defendants contend that these actions are barred by a two-year Oklahoma statute of limitations, though some defendants assert that the actions are barred by other statutes of limitations.

### D. Discussion

1. At this point in pretrial preparation, this Court considers it inappropriate and unjust to foreclose the claims asserted by plaintiffs under Sections 11 and 12(2) and holds that upon the record thus far the one-year and three-year limitations of Section 13 should be tolled in the interests of substantial justice by reason of the extraordinary facts and circumstances alleged by plaintiffs.

### 2. The Three-Year Rule.

The United States Supreme Court has stressed that in deciding whether to toll an applicable statute of limitations, "the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Burnett v. New York Central R. Co.*, 380 U.S. 424, 427, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). And further, to determine congressional intent, a court must examine "the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act." *Id.* As the Supreme Court stated in *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974):

> " . . . the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose." 414 U.S. at 539, 94 S.Ct. at 759.

■ Clearly, the purpose of the Securities Act of 1933 was to protect investors from those who would defraud them. To interpret Section 13 to mean that defendants, who had successfully concealed a fraudulent scheme for over a decade, can escape liability entirely under Sections 11 and 12(2) because their coverup activities were successful and not detected for over three years is contrary to the very purpose of the 1933 Act. That a court may toll the statute of limitations when a defendant has affirmatively acted to conceal his fraud is well established, having been decided 100 years ago in *Bailey v. Glover*, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1875). As the Supreme Court stated there:

> "To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure." 88 U.S. at 349.

Moreover, the doctrine of fraudulent concealment "is read into *every* federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (emphasis added). Although neither of these decisions involved Section 13, the wording of the statutes of limitation involved in these cases was equally as absolute. This Court is cognizant that no legislative history is available to indicate whether Congress intended Section 13 to be an absolute bar to actions under Sections 11 and 12(2) when a defendant has fraudulently concealed his scheme for more than three years. However, it is significant that the Supreme Court, in an analogous situation involving another statute of limitations phrased in similar language, held that defendant's fraud tolled the statute. *Exploration Co. v. United States*, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918). The Court reasoned that:

> "When Congress passed the act in question the rule of *Bailey v. Glover* was the established doctrine of this court. It was presumably enacted with the ruling of that case in mind. We cannot believe that Congress intended to give immunity to those who, for the period named in the

statute might be able to conceal their fraudulent action . . ." 247 U.S. at 449, 38 S.Ct. at 574.

This Court finds the arguments of defendants, that the three-year limit is absolute and that fraudulent concealment does not toll the statute, unpersuasive in light of the alleged extensive and continuing fraud perpetrated upon Home-Stake investors, the SEC and the Courts for more than a decade, which fraudulent concealment did not cease until Home-Stake collapsed in September 1973 and the facts of the fraudulent scheme were publicly revealed. If these allegations be established, this Court has no doubt that the statute was tolled until that time.

This Court also holds that the three-year statute of limitations of Section 13 is tolled for all plaintiffs because of the filing of the class action in *Anixter I* on March 30, 1973. See *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Escott v. Barchris Construction Corp.*, 340 F.2d 731 (2d Cir. 1965); *Hellerstein v. Mather*, 360 F.Supp. 473 (D.Colo.1973); *Goldstein v. Regal Crest, Inc.*, 62 F.R.D. 571 (E.D.Pa.1974).

### 3. *The One-Year Rule*

The crux of the question presented is whether the pleadings show that plaintiffs actually discovered or with reasonable diligence should have discovered the fraud in the offering or sale of Home-Stake shares. Defendants concede that normally this is a factual question to be resolved by the trier of fact, but suggest that the facts as pleaded are sufficient for the Court to dismiss the Section 11 and 12(2) claims as a matter of law. Based on the pleadings, this Court must hold that plaintiffs are not time-barred from maintaining their claims under Sections 11 and 12(2).

Defendants' alleged fraudulent concealment, which has been sufficiently elaborated, did not abate until Home-Stake collapsed in September 1973. On the face of the present record plaintiffs appear to have made diligent efforts to discover de-

fendants' wrongdoing, but were frustrated in their pursuit of the truth by Home-Stake's continuing scheme to conceal their fraud. This Court must reject defendants' contention that the April 1971 rescission offer-prospectus constituted the time when plaintiffs actually discovered or with reasonable diligence should have discovered the fraud. Defendants' vigorous argument is unpersuasive to this Court. Although the rescission offer notified plaintiffs of certain misrepresentations in the original prospectus, the rescission offer itself contained flagrant misrepresentations and omissions. The defendants issued the 1971 rescission offer under the auspices of the SEC and a federal court and their fraudulent concealment is evidence of an attempt to subvert the very processes of justice to prevent the fraud from being uncovered. Furthermore, Home-Stake also perpetrated another fraud upon the judiciary in an earlier action, *George H. McFadden & Bro., Inc. v. Home-Stake Production Co.*, supra, where it obtained a hasty settlement and dismissal of a class action without notice to class members.

That the courts should flexibly fashion relief from an absolute limitation period where fraud has been perpetrated upon the courts is clear from *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). As the Court stated:

". . . tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society . . . The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud. *Id.* at 246, 64 S.Ct. at 1001.

The apparent fraudulent use of courts and government agencies by defendants in order to clothe their fraudulent scheme with

legitimacy and to lull participants into a sense of security cannot be allowed to serve as the means by which defendants can seek refuge behind the statute of limitations. To hold otherwise, would be to encourage the fraudulent misuse of government agencies and the courts to conceal a violation of federal securities laws until the absolute statute of limitations period terminated.

E. *Relation Back*

■ Some plaintiffs amended their complaints to include new defendants and new claims. Since these amendments occurred more than one year after the filing of the original complaint, some defendants have argued that these claims are foreclosed by the one-year provision of Section 13 and that the effective date of their filing does not "relate back" under F.R.Civ.P. 15(c). This Court is not persuaded by defendants' arguments and holds that the later-filed claims relate back to the date of filing of the original complaints, which were timely.

Rule 15(c) provides that a claim relates back if it relates to the same "conduct, transaction or occurrence set forth or attempted to be set forth in the original pleadings . . . ." As one of the respected commentator's notes:

". . . Rule 15(c) is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford. Thus, if the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged, . . . will relate back even though the statute of limitations has run in the interim. . . . And an amendment which changes only the legal theory of the action, or adds another claim arising out of the same transaction or occurrence, will relate back." 3 Moore's Federal Practice, ¶ 15.15(3) at pp. 1025–30 (2d Ed. 1968).

It is clear the new claims asserted by plaintiffs in the amended pleadings arose out of and are related to the alleged ongoing scheme to defraud Home-Stake investors. The Court finds that the defendants were given fair notice of the occurrence from which the complained of conduct and activities arose. Also, Rule 15(c) should be liberally applied, especially if no disadvantage will accrue to the opposing parties. 1A Barron and Holtzoff, Federal Practice and Procedure § 448 (Wright E.D.1960). See also *United States v. Hougham*, 364 U.S. 310, 316, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960). The Court finds that no disadvantage accrued to the attorney defendants, defendant Trippett or defendant Keplinger since they were the subjects of claims under plaintiffs' original complaints.

The attorney defendants in a footnote on page 28 of their statute of limitations reply brief challenge the attorney defendants' inclusion in the additions to plaintiffs' amended complaints.

In *Travelers Indemnity Company v. United States*, 382 F.2d 103, 106 (10th Cir. 1967) the Court stated:

"Nor is the purpose of the federal rules furthered by denying the addition of a party who has a close identity of interest with the old party when the added party will not be prejudiced. The ends of justice are not served when forfeiture of just claims because of technical rules is allowed. Thus the reasons amendments are to be granted freely as justice requires, and the trial court's discretion to allow amendment will not be upset unless a clear abuse of discretion exists. *Wyoming Construction Co. v. Western Casualty & S. Co.*, 275 F.2d 97, 104 (10th Cir. 1960); *Ziegler v. Akin*, 261 F.2d 88, 90 (10th Cir. 1958); *United States Fidelity and Guaranty Co. v. United States*, 389 F.2d 697 (10th Cir. 1968).

In *Archuleta v. Duffy's, Inc.*, 471 F.2d 33 (10th Cir. 1973) the Court held:

"The trial court has here allowed a substitution of parties by amendment. Such amendment can relate back to the day the complaint was filed only if the provisions of Rule 15(c) are met." 471 F.2d at 35.

This Court finds that the requirements of Rule 15(c) have been met in this case because (1) the claims asserted arose out of the transaction set forth in the original complaint; (2) the defendants have not been prejudiced in maintaining their defenses on the merits; and (3) since the attorney defendants were added, not substituted, the Court finds that they either knew or should have known that an action against them was forthcoming.

■ An additional reason to deny defendants' contentions concerning relation back of plaintiffs' amendments, is based on the allegations of fraudulent concealment. It is alleged that thousands of Home-Stake investors, a federal district court and the SEC were deceived concerning Home-Stake's actual operations and activities until September 1973. The Court has found the allegations of fraudulent concealment sufficient to toll the applicable statute of limitations, and hereby finds those allegations sufficient to permit relation back of plaintiffs' complaint amendments, since the addition of parties could well have been delayed by fraudulent concealment. Discovery may provide convincing evidence for or against these determinations.

### F. State Statutes of Limitations

■ It is well settled that the plaintiffs' claims under Section 17 of the 1933 Act, Section 10(b) of the 1934 Act and Rule 10(b)–5 promulgated thereunder, state securities laws, and common law fraud are governed by applicable state law. The plaintiffs in these actions, however, are residents of several different states and it is alleged the claims arose in several states. The Court finds and holds that all motions to dismiss on the basis of state statutes of limitations, either those of Oklahoma or of other states, are premature. Considering the exceptional complexity of the fact issues involved in determination of limitations, rulings thereon should and will be deferred until the relevant facts are more fully developed during pretrial discovery.

For the reasons above stated, each and all of defendants' motions for dismissal based on limitation of actions are hereby denied.

IT IS SO ORDERED.

### III. MOTIONS TO DISMISS BASED ON RULE 12

By an Order entered January 21, 1975 defendants were required to submit all motions to dismiss based on Rule 12 of the Federal Rules of Civil Procedure within a fixed time. The motions filed may be broken down into two general categories; (1) failure to state a claim for relief due to *pleading* deficiencies; and (2) failure to state a claim due to *factual* deficiencies.

### A. Guidelines Re Rule 12 Motions

Before discussing the merits of these motions, the Court will briefly state the law, primarily that of the Tenth Circuit and also other sources, which set the standards and guidelines to be applied in considering and determining such motions. In *United States v. Reilly*, 385 F.2d 225 (10th Cir. 1967), the Court stated:

"In considering a dismissal for failure to state a cause of action or claim upon which relief can be granted, all facts properly pleaded must be taken as true." 385 F.2d at 230. See also *Oppenheim v. Sterling*, 368 F.2d 516 (10th Cir. 1966), *Olpin v. Ideal National Insurance Company*, 419 F.2d 1250 (10th Cir. 1969), *O'Bryan v. Chandler*, 352 F.2d 987 (10th Cir. 1965).

In *Combs v. Chambers*, 283 F.Supp. 295 (N.D.Okl.1968) the Court declared:

"It is axiomatic that on a motion to dismiss, the Court must take all facts well pleaded as true and grant the motion *only* when it appears *beyond doubt* that plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief." 283 F.Supp. at 296 (emphasis added). See also *Wilshire Oil Company of Texas v. Riffe*, 409 F.2d 1277 (10th Cir. 1969); *Oppenheim v. Sterling*, supra; *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ *Olpin v. Ideal National Insurance Company*, 419 F.2d 1250 (10th Cir. 1969) and *Hovenden v. City of Bristow, Okl.*, 34 F.Supp. 674 (N.D.Okl.1940) hold that in ruling on a motion to dismiss all reasonable inferences must be drawn against the movant.

■ Additionally, where "material issues of fact are unresolved," a motion to dismiss should not be granted. *Powell v. Southwestern Bell Telephone Company*, 494 F.2d 485 (5th Cir. 1974); *Wilshire Oil Company of Texas v. Riffe*, supra.

Rule 12 of the F.R.C.P. after enumerating defenses which may be asserted under the Rule, sub-section (d) thereof states such defenses "shall be heard and determined before trial on application of any party, *unless* the Court orders that the hearing and determination thereof be deferred until the trial." (emphasis added).

In discussing the deferred hearing provision of Rule 12(d), 3 Moore's treatise on Federal Practice states:

"It will often occur that the Court feels that the issues raised by a motion to dismiss for failure to state a claim under (b)(6) or by a motion for judgment on the pleadings are of such consequence that it is better not to decide them without full consideration of all facts which may be adduced at trial." ¶ 12.16 at p. 2356 (2d Ed. 1968).

■ All of the authorities provide that, at a minimum, the Court has discretionary authority to defer a ruling on such motions until the evidentiary facts have been developed so as to do substantial justice. This is especially appropriate and sound, given the unique circumstances of this litigation briefly summarized above.

B. *Rules Re Pleading Deficiencies*

Defendants contend the complaints of plaintiffs are deficient in two pleading respects. One is the failure to allege the requisite elements of the claims asserted or to sufficiently allege the particulars of defendants' alleged violations of various securities law provisions; second is the failure

to plead fraud and fraudulent concealment with sufficient particularity.

Rule 8(a)(e) and (f) of the Federal Rules of Civil Procedure provide:

(a) " . . . a pleading . . . shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." (e) "Each averment of a pleading shall be simple, concise and direct. No technical forms of pleadings . . . are required." (f) "All pleadings shall be so construed so as to do substantial justice."

The opinion in *Roberts v. Acres*, 495 F.2d 57 (7th Cir. 1974) provides:

"Modern commentators adhere to the proposition that the Federal Rules of Civil Procedure sanctions "notice" pleading. The complaint is designed to apprise the defendant of the incident out of which a cause of action arose and the general nature of the action. The relevant facts may be determined by discovery, with the pleadings being liberally construed so as to do substantial justice and facilitate a proper decision on the merits." 495 F.2d at 58.

"The test of adequacy of pleading is whether the adversary has sufficient notice of the pleader's claim so that he can prepare his responsive pleadings or prepare for trial." *Riblet Tramway Company v. Monte Verde Corporation*, 453 F.2d 313, 318 (10th Cir. 1972); *United States v. Missouri-Kansas-Texas Railroad Company*, 273 F.2d 474 (10th Cir. 1959).

Rule 9(b) of the Federal Rules of Civil Procedure provides:

"In all averments of fraud . . . the circumstances constituting fraud . . shall be stated with particularity."

*Nolan Bros., Inc. v. United States*, 266 F.2d 143 (10th Cir. 1959) provides:

" . . . Rule 9(b) . . . does not require a general express allegation of fraud in which the word fraud is used categorically. Instead it merely requires that the circumstances constituting fraud shall be pleaded with particularity." 266 F.2d at 145.

■ This Court is of the opinion that Rule 9(b) should be read and construed together with Rule 8 so that neither rule "controls" the other but that fraud be particularized in as short, plain and direct way as is reasonable under Rule 8(a) and 8(e). *Carrigan v. California State Legislature*, 263 F.2d 560 (9th Cir. 1959).

## C. Discussion

The general comments below indicate some of the problem areas presented by the Rule 12 motions to dismiss.

### 1. Rescission Offer

Plaintiffs assert claims based on Sections 11, 12 and 17 of the Securities Act of 1933 and § 10(b) of the Securities Exchange Act of 1934 per Rule 10b–5. The parties agree that the statutes require sales or purchases. Defendants contend that no purchase or sale was involved in the rescission offer and therefore plaintiffs may not assert their claims based on the acts referred to.

1970 Home-Stake participation units were the subject of the 1971 rescission offer. Only persons holding 1970 participation units received the Home-Stake offer to rescind. Therefore the offer was an integral part of their ownership interest in the 1970 units.

The plaintiffs allege that the rescission offer constituted a "constructive" repurchase; that an entirely different investment decision was made on the basis of the offer and upon that basis seek the equity power of the Court to right an alleged wrong. In order to consider whether to exercise such power, if in the circumstances the Court has it, the Court can only properly do so when all facts are available which might have a bearing on the matter. Plaintiffs allege that the offer itself was a fraudulent episode in an ongoing scheme to defraud thousands of investors of large sums. A legal decision on such a matter should rest upon established facts and not factual allegations. In such a situation the totality of the circumstances should be considered by the Court and not merely particular circumstances and events indicated by either plaintiffs' or defendants' counsel. In the opinion of this Court the factual basis for determining plaintiffs' motion is not yet fully before the Court and will not be until all relevant facts have been established.

### 2. § 12(2) Participation

■ The attorney defendants assert they were not actual sellers of Home-Stake securities. Plaintiffs contend the attorneys knowingly participated in and aided and abetted persons selling. Although "participation" is a conclusory term and has little meaning without the facts underlying such conclusion, the Court finds that significant participation in the sale of securities may be sufficient for § 12(2) liability. See *Caesars Palace Securities Litigation*, 360 F.Supp. 366 (S.D.N.Y.1973); *Katz v. Amos Treat & Co.*, 411 F.2d 1046 (2d Cir. 1969); *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680 (5th Cir. 1971). The parties have cited neither a Tenth Circuit case precluding § 12(2) liability for participation in a sales effort nor one granting a motion to dismiss on the basis of plaintiffs' § 12(2) allegations.

### 3. § 17 Implied Private Civil Remedy

Plaintiffs recognize that conduct violative of § 17 of the 1933 Act also gives rise to Rule 10b–5 liability. The Court having ruled that plaintiffs' Rule 10b–5 claims have been sufficiently pleaded, there is no present need or other reason to pass upon implied civil liability under § 17.

### 4. Common Law Negligence

The attorney defendants contend that plaintiffs have failed to plead or show a privity relationship with the attorney defendants and cite Tenth Circuit cases adopting *Ultramares Corporation v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931) as supporting their position. However, *Ultramares* states at page 448:

"If there has been neither reckless misstatements nor insincere profession of an opinion, but only honest blunder the ensuing liability for negligence is one that is bounded by the contract, and is to be enforced between the parties by whom the contract has been made."

Plaintiffs' contentions that the attorney defendants were grossly negligent creates an issue as to the attorney defendants' recklessness of service or sincerity of opinion. Other plaintiffs contend privity is not required under an emerging theory of attorney and accountant liability recognized in other jurisdictions, most notably California. Defendants acknowledge the retreat from privity in certain jurisdictions but assert the facts of this litigation renders such precedent inapposite.

5. *The Securities Act of 1933 Should Preclude Plaintiff From Asserting Claims Under the Securities Exchange Act of 1934*

Defendants contend the 1933 Act provisions should preclude plaintiffs' assertion of claims under the 1934 Act under a theory of mutual exclusivity.

 There is no substantial authority to preclude plaintiffs from asserting claims under the provisions of both the 1933 and 1934 Acts.

Defendants cite, inter alia, the following footnote from *Blue Chip Stamps et al. v. Manor Drug Stores* which reads:

"Blue Chip did not here present the question of whether an implied action under § 10(b) of the 1934 Act and Rule 10b–5 will lie for actions made in violation of the 1933 Act and the subject of express civil remedies under the 1933 Act. We therefore have no occasion to pass on this issue." 421 U.S. 723, at p. 752, n. 15, 95 S.Ct. 1917, at p. 1933, 44 L.Ed.2d 539 (1975).

At best, the *Blue Chip* footnote renders the issue whether an implied 10b–5 claim extends to purchasers an open question, thus the court is not precluded from considering the numerous cases, the attorney defendants acknowledge, which recognize an implied 10b–5 claim in purchasers of securities. Therefore, plaintiffs' assertion of claims cognizable in most circuits and not repudiated or qualified by the United States Supreme Court, satisfies this Court that ruling on this motion should be deferred.

6. *Subject Matter Jurisdiction*

The Court is satisfied that (1) plaintiffs have alleged sufficient activities of defendants in interstate commerce to support subject matter jurisdiction, (2) pendent jurisdiction should be exercised over state claims, and (3) complaint amendments, including new parties, were properly permitted.

D. *Conclusion*

At the conclusion of discovery, one or more of the preceding matters may be in a posture for determination prior to trial; if so, defendants may apply for presentation thereof at that time.

The following motions, based upon full consideration of the memoranda, argument of counsel and the authorities referred to above have satisfied the Court that determination should be deferred until the issues therein are presented and determined as they arise in the order of proof at trial: Motions to dismiss based on defendants' contentions that the rescission offer bars fraud claims based on purchases of the 1970 units; and contentions that failure to disclose knowledge of misrepresentations subsequent to plaintiffs' purchase of units is not actionable.

Additionally, the following motions to dismiss based on alleged pleading deficiencies are hereby denied based upon a detailed examination of the pleadings, argument of counsel and the applicable standards and guidelines: failure to allege elements of § 11, § 12(2), § 17 and Rule 10b–5 claims; failure to allege specific wrongful conduct; failure to allege scienter for § 17 and 10b–5 claims; failure to plead fraud with particularity and failure to allege falsity of "expertised" portions of registration statements.

IT IS SO ORDERED.

IV. *MASTER'S REPORT*

After fully considering the interrogatories compiled by the Special Master and the arguments of the parties, the Court hereby adopts the report pursuant to Federal Rule 53(e)(2).

Since the interrogatories go to the merits of plaintiffs' discovery pertaining to defendants' alleged wrongdoing, responses thereto at this time would disrupt the parallel and controlled discovery recommended by the Manual for Complex Litigation. Therefore, answers to these interrogatories shall be scheduled in second-wave discovery on the merits.

Each and all of the rulings made above in this decision are hereby confirmed.

IT IS SO ORDERED this 4th day of August, 1975.