939 F.2d 1420
 60 USLW 2121, Fed. Sec. L. Rep. P 96,128
 Ivan A. ANIXTER; Blanche Dickenson; Dolly K. Yoshida, on
behalf of themselves and all others similarly
situated, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1971 Program Operating Corporation; Home-Stake
1970 Program Operating Corporation; Home-Stake 1969 Program
Operating Corporation; Home-Stake 1968 Program Operating
Corporation; Home-Stake 1967 Program Operating Corporation;
Home-Stake 1966 Program Operating Corporation; Home-Stake
1965 Program Operating Corporation; Robert S. Trippet;
E.M. Kunkel; Thomas A. Landrith, Jr.; J.D. Metcalfe; H.B.
Gutelius; H.L. Fitzgerald, Defendants,
and
Wynema Anna Cross, Executrix of the Estate of Norman C.
Cross, Jr.; Norman C. Cross, Jr., Defendants-Appellants.
A.M. ANDERSON; Bank of America National Trust and Savings
Association, as Trustee for Merl McHenry, Joseph A. Buda,
Arthur Bueche, George V.T. and Helen Burgess; Dewey J.
Cali; William H. Colquhoun; S.W. Corbin; Robert B.
Coburn; Virgil B. Day; William H. Dennler; Mario
Dimartino; Stella Dimartino; John M. Evans; Margaret C.
Everett; Isador H. Finkelstein; Joseph H. Gauss; H.W.
Gouldthorpe; Ralph A. Hart; James J. Hayes; Earl D.
Hilburn; Joseph E. Horak; Gerald A. Hoyt; Richard M.
Hurst; Ralph Iannucci; Emily Iannucci; Milton F. Kent;
Howard Kicherer; Elizabeth Kicherer; John Kokoszka;
Millie B. Lassing; Joseph Levin; Marie F. Levin; John D.
Lockton; Dennis G. Lyons; Ferdinand F. McAllister;
Russell W. McFall; James Madden; Albert Manganelli;
Nicholas A. Marchese; Stanley A. Marks; John G. Martin;
C.W. Moeller; Andrew Overby; Carl E. Palermo; Frank A.
Palermo; Roy T. Parker, Jr.; Bruce M. Robertson; D.D.
Scarff; M.L. Scarff; A.E. Schubert; William R. Smart;
E. Starr; Janet G. Stewart; Gerald Toomey; Paul Townsend;
Vernon Underwood; H.B. Waldron, Jr.; Ted B. Westfall,
Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1970 Program Operating Corporation, a Delaware
corporation; Robert S. Trippet; Harry Heller; Simpson
Thacher and Bartlett, a partnership; Thomas A. Landrith,
Jr.; E.M. Kunkel; McAfee, Taft, Mark, Bond, Rucks, and
Woodruff, a professional corporation and its professional
employees and attorneys and partners, their successors and
assigns, Defendants,
and
Wynema Anna Cross, Executrix of the Estate of Norman C.
Cross, Jr.; Norman C. Cross, Jr., Defendants-Appellants.
A.M. ANDERSON; Richard J. Anton; Bank of America National
Trust and Savings Association, as Trustee for Merl McHenry,
E.P. Bernuth, Sophie K. Bernuth, Joseph A. Buda, George and
Helen Burgess; Dewey J. Cali; Robert B. Coburn; Coburn &
Libby, Inc.; Edward V. Coonan; S.W. Corbin; William H.
Dennler; Mario Dimartino; Stella Dimartino; John Evans;
Margaret C. Everett; L.L. Ferguson; Isador H. Finkelstein;
H.W. Gouldthorpe; George L. Haller; Jack Hanson; Ralph
Hart; F.H. Holt; Joseph E. Horak; Gerald A. Hoyt; Howard
G. Kicherer; Elizabeth C. Kicherer; John Kokoszka; Millie
B. Lassing; Joseph Levin; Marie Levin; John D. Lockton;
D.W. Lynch; D.B. Lynch; Dennis G. Lyons; Ferdinand F.
McAllister; Russell McFall; James F. Madden; Albert
Manganelli; Nicholas Marchese; Stanley A. Marks; C.W.
Moeller; William H. Mortensen; Carl Olson; Patricia
Olson; Carl Palermo; Frank Palermo; Roy T. Parker; Helen
M. Reeder; D.D. Scarff; M.L. Scarff; Richard Scott;
Louis P. Singer; William R. Smart; J. Stanford Smith; G.
Curtis Stewart; Paul Townsend; Vernon Underwood; Ted B.
Westfall; J. Howard Wood; Sidney Woolwich; Murray
Zimmerman, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1969 Program Operating Corporation, a Delaware
corporation; Robert S. Trippet; E.M. Kunkel; Thomas A.
Landrith, Jr.; Harry Heller; William Blum; Simpson
Thacher and Bartlett; William D. Lewis; Richard A. Ganong;
Lewis & Ganong, a partnership, Defendants,
and
Wynema Anna Cross, Executrix of the Estate of Norman C.
Cross, Jr., Defendant-Appellant.
BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, as
Trustee for Marcella McHenry, Merl McHenry, Fred J. Borch,
David Breslauer, Joseph A. Buda; Dewey Cali; James Clark;
Mary Clark; William H. Colquhoun; Edward V. Coonan; S.W.
Corbin; William H. Dennler; Mario Dimartino; Stella
Dimartino; John Evans; L.L. Ferguson; Jack Fine; Isador
H. Finkelstein; Joseph H. Gauss; H.W. Gouldthorpe; James
J. Hayes; Earl D. Hilburn; Dorothy C. Holt; Joseph E.
Horak; Gerald A. Hoyt; Richard M. Hurst; John E.
Hutchinson, III; Harold Kaplan; W.S. Jones; Howard G.
Kicherer; Elizabeth Kicherer; John Kokoszka; Millie B.
Lassing; Joseph Levin; Marie Levin; D.W. Lynch; D.B.
Lynch, Dennis G. Lyons; Ferdinand F. McAllister; Russell
W. McFall; Anthony Macagna; James F. Madden; Albert
Manganelli; Nicolas A. Marchese; Charles J. Meloun; C.W.
Moeller; Carl J. Olson; Patricia Olson; Thomas O. Paine;
Carl E. Palermo; Frank A. Palermo; Roy T. Parker, Jr.;
Howard Rubenstein; D.D. Scarff; M.L. Scarff; C.S. Semple;
William Smart; J. Stanford Smith; Janet G. Stewart;
Gerald Toomey; Oliver J. Troster; H.B. Waldron, Jr.;
Humberto Zavaleta; Murray Zimmerman, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1971 Program Operating Corporation, a Delaware
corporation; Robert S. Trippet; Harry Heller; Simpson
Thacher and Bartlett, a partnership; William Blum; Thomas
A. Landrith, Jr.; E.M. Kunkel; McAffe, Taft, Mark, Bond,
Rucks, and Woodruff, a professional corporation and its
professional employees and attorneys and partners, their
successors and assigns; William D. Lewis; Richard A.
Ganong; Lewis & Ganong, a partnership, Defendants,
and
Wynema Anna Cross, as Executrix of the Estate of Norman C.
Cross, Jr., Defendant-Appellant.
Ivan A. ANIXTER; William H. Dennler; John D. Lockton;
Francis K. McCune; Ted B. Westfall; William H. Mortensen;
Peter P. Luce; William D. Robertson; Bernard D. Broeker;
Thomas H. Thorner; Dolly Yoshida Martin; William Grohne;
James H. Leachman; Beverly H. Warren; Joseph C. Bennett,
Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1964 Program Operating Corporation; Home-Stake
1965 Program Operating Corporation; Home-Stake 1966 Program
Operating Corporation; Home-Stake 1967 Program Operating
Corporation; Home-Stake 1968 Program Operating Corporation;
Home-Stake 1969 Program Operating Corporation; Home-Stake
1970 Program Operating Corporation; Home-Stake 1971 Program
Operating Corporation; Home-Stake 1972 Program Operating
Corporation; Robert S. Trippet; H.L. Fitzgerald; H.R.
Smith; Frank E. Sims; John T. Lenoir; Thomas A. Landrith,
Jr.; E.M. Kunkel; Jackson M. Barton; Marvin R. Barnett;
Donald C. Larrabee; J.D. Metcalfe; H.B. Gutelius; Carl E.
Clay; William E. Murray; Murray, Patterson & Sharpe;
Dryfoos & Company; McAfee, Taft, Mark, Bond, Rucks, and
Woodruff; Simpson Thacher and Bartlett; Harry Heller;
William Blum; Richard A. Ganong; William D. Lewis; Lewis
& Ganong; Richard A. Ganong, Inc.; Norman C. Cross, Jr.;
Kent Klineman, Defendants,
and
Cross and Company, Defendant-Appellant.
Ivan A. ANIXTER; Blanche Dickenson; Dolly K. Yoshida; and
Joseph C. Bennett, on behalf of themselves and all
others similarly situated, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1971 Program Operating Corporation; Home-Stake
1970 Program Operating Corporation; Home-Stake 1969 Program
Operating Corporation; Home-Stake 1968 Program Operating
Corporation; Home-Stake 1967 Program Operating Corporation;
Home-Stake 1966 Program Operating Corporation; Home-Stake
1965 Program Operating Corporation; Robert S. Trippet;
E.M. Kunkel; Thomas A. Landrith, Jr.; J.D. Metcalfe; H.B.
Guetlius; H.L. Fitzgerald; Norman C. Cross, Jr.; Murray,
Patterson & Sharpe, a partnership; Dryfoos & Company, a
limited partnership; McAfee, Taft, Mark, Bond, Rucks, and
Woodruff, a professional corporation; Simpson Thacher and
Bartlett, a partnership; Lewis & Ganong, a partnership;
William E. Murray; Kent Klineman; William Blum; Harry
Heller; Richard A. Ganong; William D. Lewis; John T.
Lenoir; Carl E. Clay; Jackson M. Barton; Marvin R.
Barnett; Frank E. Sims; H.R. Smith; Donald C. Larrabee;
Richard A. Ganong, Inc., a corporation, Defendants,
and
Kothe & Eagleton, Inc., a professional corporation,
Defendant-Appellant.
Ivan A. ANIXTER; Blanche Dickenson; Dolly K. Yoshida, on
behalf of themselves and all others similarly
situated, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1971 Program Operating Corporation; Home-Stake
1970 Program Operating Corporation; Home-Stake 1969 Program
Operating Corporation; Home-Stake 1968 Program Operating
Corporation; Home-Stake 1967 Program Operating Corporation;
Home-Stake 1966 Program Operating Corporation; Home-Stake
1965 Program Operating Corporation; Robert S. Trippet;
Thomas A. Landrith, Jr.; J.D. Metcalfe; H.B. Gutelius;
H.L. Fitzgerald; Norman C. Cross, Jr., Defendants,
and
E.M. Kunkel, Defendant-Appellant.
Richard J. ANTON; Morrell H. Blesh; Arthur M. Bueche;
S.W. Corbin; Virgil B. Day; William H. Dennler; L.L.
Ferguson; Isador H. Finkelstein; Thomas S. Gates; Joseph
H. Gauss; Margaret W. Gillespie; H.W. Gouldthorpe; George
L. Haller; Ralph A. Hart; Charles M. Heiden; Dorothy C.
Holt; Victor Holt, Jr.; Richard M. Hurst; P.J. Jensen;
Robert B. Keegan; Milton F. Kent; Millie B. Lassing; John
D. Lockton; D.W. Lynch; D.B. Lynch; Ferdinand F.
McAllister; Francis K. McCune; Russell W. McFall; John G.
Martin; H.D. Meader; Betty Jane Mills; David K. Mills;
C.W. Moeller; William H. Mortensen; D.D. Scarff; M.L.
Scarff; William R. Smart; J. Stanford Smith; Robert P.
Strub; Estate of Vera Strub; Vernon Underwood; Hoyt
Ammidon, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Harry Heller; William Blum; Simpson Thacher and Bartlett,
a partnership; William D. Lewis; Richard A. Ganong;
Home-Stake 1966 Program Operating Corporation; Lewis &
Ganong, a partnership; Robert S. Trippet; Thomas A.
Landrith, Jr., Defendants.
and
E.M. Kunkel, Defendant-Appellant.
Morrell H. BLESH; Fred J. Borch; S.W. Corbin; Virgil B.
Day; William H. Dennler; L.L. Ferguson; Isador H.
Finkelstein; George L. Haller; Ralph A. Hart; F.H. Holt;
D. Holt; Victor Holt, Jr.; Gerald A. Hoyt; John D.
Lockton; D.W. Lynch; D.B. Lynch; F.F. McAllister;
Francis K. McCune; John G. Martin; H.D. Meader; C.W.
Moeller; William H. Mortensen; D.D. Scarff; M.L. Scarff;
J. Stanford Smith; C.G. Suits, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1964 Program Operating Corporation, a Delaware
corporation; Robert S. Trippet; Thomas A. Landrith, Jr.;
Harry Heller; William Blum; Simpson Thacher and Bartlett,
a partnership, Defendants,
and
E.M. Kunkel, Defendant-Appellant.
A.M. ANDERSON; Bank of America National Trust and Savings
Association, as Trustee for Merl McHenry, Joseph A. Buda,
Arthur Bueche, George V.T. Burgess, Helen Burgess; Dewey J.
Cali; William H. Colquhoun; S.W. Corbin; Robert B.
Coburn; Virgil B. Day; William H. Dennler; Mario
Dimartino; Stella Dimartino; John M. Evans; Margaret C.
Everett; Isador H. Finkelstein; Joseph H. Gauss; H.W.
Gouldthorpe; Ralph Hart; James J. Hayes; Earl D. Hilburn;
Joseph E. Horak; Gerald A. Hoyt; Richard M. Hurst; Ralph
Iannucci; Emily Iannucci; Milton F. Kent; Howard
Kicherer; Elizabeth Kicherer; John Kokoszka; Millie B.
Lassing; Joseph Levin; Marie F. Levin; John D. Lockton;
Dennis G. Lyons; Ferdinand F. McAllister; Russell W.
McFall; James Madden; Albert Manganelli; Nicholas A.
Marchese; Stanley A. Marks; John G. Martin; C.W. Moeller;
Andrew Overby; Carl E. Palermo; Frank A. Palermo; Roy T.
Parker, Jr.; Bruce M. Robertson; D.D. Scarff; M.L.
Scarff; A.E. Schubert; William R. Smart; Janet G.
Stewart; Gerald Toomey; Paul Townsend; Vernon Underwood;
H.B. Waldron, Jr.; Ted B. Westfall, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1970 Program Operating Corporation, a Delaware
corporation; Robert S. Trippet; Harry Heller; Simpson
Thacher and Bartlett, a partnership; William Blum; Thomas
A. Landrith, Jr.; McAfee, Taft, Mark, Bond, Rucks, and
Woodruff, a professional corporation and its professional
employees and attorneys and partners, their successors and
assigns; Norman C. Cross, Jr., Defendants,
and
E.M. Kunkel, Defendant-Appellant.
Morrell H. BLESH; Fred J. Borch; S.W. Corbin; Virgil B.
Day; William H. Dennler; L.L. Ferguson; Isador H.
Finkelstein; Thomas S. Gates; George L. Haller; Ralph A.
Hart; F.H. Holt; D. Holt; Charles M. Heiden; Victor
Holt, Jr.; Gerald A. Hoyt; John D. Lockton; Doreen B.
Hoyt; Peter J. Jensen; Milton F. Kent; Millie B. Lassing;
D.W. Lynch; D.B. Lynch; F.F. McAllister; Francis K.
McCune; John G. Martin; H.D. Meader; C.W. Moeller;
William H. Mortensen; D.D. Scarff; M.L. Scarff; J.
Stanford Smith; C.G. Suits, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1965 Program Operating Corporation; Robert S.
Trippet; Thomas A. Landrith, Jr.; Harry Heller; William
Blum; Simpson Thacher and Bartlett, a partnership, Defendants,
and
E.M. Kunkel, Defendant-Appellant.
A.M. ANDERSON; Richard J. Anton; Bank of America National
Trust and Savings Association, as Trustee for Merl McHenry,
E.P. Bernuth, Sophie K. Bernuth, Joseph A. Buda, George and
Helen Burgess; Dewey J. Cali; Robert B. Coburn; Coburn &
Libby, Inc.; Edward V. Coonan; S.W. Corbin; William H.
Dennler; Mario Dimartino; Stella Dimartino; John Evans;
Margaret C. Everett; L.L. Ferguson; Isador H. Finkelstein;
H.W. Gouldthorpe; George L. Haller; Jack Hanson; Ralph
Hart; F.H. Holt; Joseph E. Horak; Gerald A. Hoyt; Howard
G. and Elizabeth C. Kicherer; John Kokoszka; Millie B.
Lassing; Joseph Levin; Marie Levin; John D. Lockton;
D.W. and D.B. Lynch; Dennis G. Lyons; Ferdinand F.
McAllister; Russell McFall; James F. Madden; Albert
Manganelli; Nicholas Marchese; Stanley A. Marks; C.W.
Moeller; William H. Mortensen; Carl and Patricia Olson;
Carl Palermo; Frank Palermo; Roy T. Parker; Helen M.
Reeder; D.D. Scarff; M.L. Scarff; Richard Scott; Louis
P. Singer; William R. Smart; J. Stanford Smith; G. Curtis
Stewart; Paul Townsend; Vernon Underwood; Ted B.
Westfall; J. Howard Wood; Sidney Woolwich and Murray
Zimmerman, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1969 Program Operating Corporation, a Delaware
corporation; Elmer M. Kunkel; Thomas A. Landrith, Jr.;
Harry Heller; William Blum; Simpson Thacher and Bartlett,
a partnership; Norman C. Cross, Jr.; William D. Lewis;
Richard A. Ganong; Lewis & Ganong, a partnership, Defendants,
and
Robert S. Trippet, Defendant-Appellant.
A.M. ANDERSON; Bank of America National Trust and Savings
Association, as Trustee for Merl McHenry, Joseph A. Buda,
Arthur Bueche, George V.T. Burgess, Helen Burgess; Dewey J.
Cali; William H. Colquhoun; S.W. Corbin; Robert B.
Coburn; Virgil B. Day; William H. Dennler; Mario
Dimartino; Stella Dimartino; John M. Evans; Margaret C.
Everett; Isador H. Finkelstein; Joseph H. Gauss; H.W.
Gouldthorpe; Ralph Hart; James J. Hayes; Earl D. Hilburn;
Joseph E. Horak; Gerald A. Hoyt; Richard M. Hurst; Ralph
Iannucci; Emily Iannucci; Milton F. Kent; Howard
Kicherer; Elizabeth Kicherer; John Kokoszka; Millie B.
Lassing; Joseph Levin; Marie F. Levin; John D. Lockton;
Dennis G. Lyons; Ferdinand F. McAllister; Russell W.
McFall; James Madden; Albert Manganelli; Nicholas A.
Marchese; Stanley A. Marks; John G. Martin; C.W. Moeller;
Andrew Overby; Carl E. Palermo; Frank A. Palermo; Roy T.
Parker, Jr.; Bruce M. Robertson; D.D. Scarff; M.L.
Scarff; A.E. Schubert; William R. Smart; Janet G.
Stewart; Gerald Toomey; Paul Townsend; Vernon Underwood;
H.B. Waldron, Jr.; Ted B. Westfall, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1968 Program Operating Corporation, Defendants,
and
Robert S. Trippet, Defendant-Appellant.
A.M. ANDERSON; Bank of America National Trust and Savings
Association, as Trustee for Merl McHenry, Joseph A. Buda,
Arthur Bueche, George V.T. and Helen Burgess; Dewey J.
Cali; William H. Colquhoun; S.W. Corbin; Robert B.
Coburn; Virgil B. Day; William H. Dennler; Mario
Dimartino; Stella Dimartino; John M. Evans; Margaret C.
Everett; Isador H. Finkelstein; Joseph H. Gauss; H.W.
Gouldthorpe; Ralph Hart; James J. Hayes; Earl D. Hilburn;
Joseph E. Horak; Gerald A. Hoyt; Richard M. Hurst; Ralph
Iannucci; Emily Iannucci; Milton F. Kent; Howard
Kicherer; Elizabeth Kicherer; John B. Kokoszka; Millie B.
Lassing; Joseph Levin; Marie F. Levin; John D. Lockton;
Dennis G. Lyons; Ferdinand F. McAllister; Russell W.
McFall; James Madden; Albert Manganelli; Nicholas A.
Marchese; Stanley A. Marks; John G. Martin; C.W. Moeller;
Andrew Overby; Carl E. Palermo; Frank A. Palermo; Roy T.
Parker, Jr.; Bruce M. Robertson; D.D. Scarff; M.L.
Scarff; A.E. Schubert; William R. Smart; E. Starr; Janet
G. Stewart; Gerald Toomey; Paul Townsend; Vernon
Underwood; H.B. Waldron, Jr.; Ted B. Westfall, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1970 Program Operating Corporation, a Delaware
corporation; Harry Heller, Simpson Thacher and Bartlett, a
partnership; Thomas A. Landrith, Jr.; E.M. Kunkel;
McAfee, Taft, Mark, Bond, Rucks, and Woodruff, a
professional corporation and its professional employees and
attorneys and partners, their successors and assigns;
Wynema Anna Cross, Executrix of the Estate of Norman C.
Cross, Jr.; Norman C. Cross, Jr., Defendants,
and
Robert S. Trippet, Defendant-Appellant.
BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, as
Trustee for Marcella McHenry, Merl McHenry, Fred J. Borch,
David Breslauer, Joseph A. Buda; Dewey J. Cali; James
Clark; Mary Clark; William H. Colquhoun; Edward V.
Coonan; S.W. Corbin; William H. Dennler; Mario Dimartino;
Stella Dimartino; John Evans; L.L. Ferguson; Jack Fine;
Isador H. Finkelstein; Joseph H. Gauss; H.W. Gouldthorpe;
James J. Hayes; Earl D. Hilburn; Dorothy C. Holt; Joseph
E. Horak; Gerald A. Hoyt; Richard M. Hurst; John E.
Hutchinson, III; Harold Kaplan; W.S. Jones; Howard G.
Kicherer; Elizabeth Kicherer; John Kokoszka; Millie B.
Lassing; Joseph Levin; Marie Levin; D.W. Lynch; D.B.
Lynch; Dennis G. Lyons; Ferdinand F. McAllister; Russell
W. McFall; Anthony Macagna; James F. Madden; Albert
Manganelli; Nicholas A. Marchese; Charles J. Meloun; C.W.
Moeller; Carl J. Olson; Patricia Olson; Thomas O. Paine;
Carl E. Palermo; Frank A. Palermo; Roy T. Parker, Jr.;
Howard Rubenstein; D.D. Scarff; M.L. Scarff; C.S. Semple;
William Smart; J. Stanford Smith; Janet G. Stewart;
Gerald Toomey; Oliver J. Troster; H.B. Waldron, Jr.;
Humberto Zavaleta; Murray Zimmerman, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1971 Program Operating Corporation, a Delaware
corporation; Harry Heller; Simpson Thacher and Bartlett, a
partnership; William Blum; Thomas A. Landrith, Jr.; E.M.
Kunkel; McAffe, Taft, Mark, Bond, Rucks, and Woodruff, a
professional corporation and its professional employees and
attorneys and partners, their successors and assigns;
Norman C. Cross, Jr.; William D. Lewis; Richard A. Ganong;
Lewis & Ganong, a partnership, Defendants,
and
Robert S. Trippet, Defendant-Appellant.
Richard J. ANTON; Morrell H. Blesh; Arthur M. Bueche;
S.W. Corbin; Virgil B. Day; William H. Dennler; L.L.
Ferguson; Isador H. Finkelstein; Thomas S. Gates; Joseph
H. Gauss; Margaret W. Gillespie; H.W. Gouldthorpe; George
L. Haller; Ralph A. Hart; Charles M. Heiden; Dorothy C.
Holt; Victor Holt, Jr.; Richard M. Hurst; P.J. Jensen;
Robert B. Keegan; Milton F. Kent; Millie B. Lassing; John
D. Lockton; D.W. Lynch; D.B. Lynch; Ferdinand F.
McAllister; Francis K. McCune; Russell W. McFall; John G.
Martin; H.D. Meader; Betty Jane Mills; David K. Mills;
C.W. Moeller; William H. Mortensen; D.D. Scarff; M.L.
Scarff; William R. Smart; J. Stanford Smith; Robert P.
Strub; Estate of Vera Strub; Vernon Underwood; Hoyt
Ammidon, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY; Home-Stake 1967 Program
Operating Corporation, Defendants,
and
Robert S. Trippet, Defendant-Appellant.
Richard J. ANTON; Morrell H. Blesh; Arthur M. Bueche;
S.W. Corbin; Virgil B. Day; William H. Dennler; L.L.
Ferguson; Isador H. Finkelstein; Thomas S. Gates; Joseph
H. Gauss; Margaret W. Gillespie; H.W. Gouldthorpe; George
L. Haller; Ralph A.Hart; Dorthy C. Holt and Fred H. Holt;
Victor Holt, Jr.; Richard M. Hurst; P.J. Jensen; Robert
B. Keegan; Milton F. Kent; Millie B. Lassing; John D.
Lockton; D.W. Lynch; Ferdinand F. McAllister; Francis K.
McCune; Russell W. McFall; John G. Martin; H.D. Meader;
Betty Jane Mills; David K. Mills; C.W. Moeller; William
H. Mortensen; D.D. Scarff; M.L. Scarff; William R. Smart;
J. Stanford Smith; Estate of Vera Strub; Vernon
Underwood; Hoyt Ammidon, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Harry Heller; William Blum; Simpson Thacher and Bartlett,
a partnership; William D. Lewis; Richard A. Ganong;
Home-Stake 1966 Program Operating Corporation; Lewis &
Ganong, a partnership; E.M. Kunkel; Thomas A. Landrith,
Jr., Defendants,
and
Robert S. Trippet, Defendant-Appellant.
Morrell H. BLESH; Fred J. Borch; S.W. Corbin; Virgil B.
Day; William H. Dennler; L.L. Ferguson; Isador H.
Finkelstein; George L. Haller; Ralph A. Hart; F.H. Holt;
D. Holt; Victor Holt, Jr.; Gerald A. Hoyt; John D.
Lockton; D.W. Lynch; D.B. Lynch; F.F. McAllister;
Francis K. McCune; John G. Martin; H.D. Meader; C.W.
Moeller; William H. Mortensen; D.D. Scarff; M.L. Scarff;
J. Stanford Smith; C.G. Suits, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1965 Program Operating Corporation; Thomas A.
Landrith, Jr.; E.M. Kunkel; Harry Heller; William Blum;
Simpson Thacher and Bartlett, a partnership, Defendants,
and
Robert S. Trippet, Defendant-Appellant.
Morrell H. BLESH; Fred J. Borch; S.W. Corbin; Virgil B.
Day; William H. Dennler; L.L. Ferguson; Isador H.
Finkelstein; George L. Haller; Ralph A. Hart; F.H. Holt;
D. Holt; Victor Holt, Jr.; Gerald A. Hoyt; John D.
Lockton; D.W. Lynch; D.B. Lynch; F.F. McAllister;
Francis K. McCune; John G. Martin; H.D. Meader; C.W.
Moeller; William H. Mortensen; D.D. Scarff; M.L. Scarff;
J. Stanford Smith; C.G. Suits, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1964 Program Operating Corporation, a Delaware
corporation; Thomas A. Landrith, Jr.; E.M. Kunkel; Harry
Heller; William Blum; Simpson Thacher and Bartlett, Defendants,
and
Robert S. Trippet, Defendant-Appellant.
Ivan A. ANIXTER; Blanche Dickenson; Dolly K. Yoshida, on
behalf of themselves and all others similarly
situated, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1971 Program Operating Corporation; Home-Stake
1970 Program Operating Corporation; Home-Stake 1969 Program
Operating Corporation; Home-Stake 1968 Program Operating
Corporation; Home-Stake 1967 Program Operating Corporation;
Home-Stake 1966 Program Operating Corporation; Home-Stake
1965 Program Operating Corporation; E.M. Kunkel; Thomas A.
Landrith, Jr.; J.D. Metcalfe; H.B. Gutelius; H.L.
Fitzgerald; Norman C. Cross, Jr., Defendants,
and
Robert S. Trippet, Defendant-Appellant.
Ivan A. ANIXTER; Blanche Dickenson; Dolly K. Yoshida, on
behalf of themselves and all others similarly
situated, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1971 Program Operating Corporation; Home-Stake
1970 Program Operating Corporation; Home-Stake 1969 Program
Operating Corporation; Home-Stake 1968 Program Operating
Corporation; Home-Stake 1967 Program Operating Corporation;
Home-Stake 1966 Program Operating Corporation; Home-Stake
1965 Program Operating Corporation; E.M. Kunkel; Thomas A.
Landrith, Jr.; J.D. Metcalfe; H.B. Gutelius; H.L.
Fitzgerald; Norman C. Cross, Jr., Defendants,
and
Robert S. Trippet, Defendant-Appellant.
Ivan A. ANIXTER; Blanche Dickenson; Dolly K. Yoshida, on
behalf of themselves and all others similarly
situated, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1971 Program Operating Corporation; Home-Stake
1970 Program Operating Corporation; Home-Stake 1969 Program
Operating Corporation; Home-Stake 1968 Program Operating
Corporation; Home-Stake 1967 Program Operating Corporation;
Home-Stake 1966 Program Operating Corporation; Home-Stake
1965 Program Operating Corporation; Robert S. Trippet;
E.M. Kunkel; Thomas A. Landrith, Jr.; J.D. Metcalfe; H.B.
Gutelius; H.L. Fitzgerald; Norman C. Cross, Jr., Defendants,
and
Frank E. Sims, Defendant-Appellant.
Ivan A. ANIXTER; Blanche Dickenson; Dolly K. Yoshida, on
behalf of themselves and all others similarly
situated, Plaintiffs-Appellees,
v.
HOME-STAKE PRODUCTION COMPANY, an Oklahoma corporation;
Home-Stake 1971 Program Operating Corporation; Home-Stake
1970 Program Operating Corporation; Home-Stake 1969 Program
Operating Corporation; Home-Stake 1968 Program Operating
Corporation; Home-Stake 1967 Program Operating Corporation;
Home-Stake 1966 Program Operating Corporation; Home-Stake
1965 Program Operating Corporation; Robert S. Trippet;
E.M. Kunkel; Thomas A. Landrith, Jr.; J.D. Metcalfe: H.B.
Gutelius; H.L. Fitzgerald; Norman C. Cross, Jr., Defendants,
and
Frank E. Sims, Defendant-Appellant.
 Nos. 90-5040 to 90-5049, 90-5051, 90-5053, 90-5055 to
90-5059 and 90-5062 to 90-5067.
 United States Court of Appeals,
Tenth Circuit.
 July 22, 1991.
 
 Walter Steele, Denver, Colo., and Thomas M. Affeldt, co-counsel, (C.B. Savage, with him on the briefs), of Savage, O'Donnell, Scott, McNulty & Affeldt, Tulsa, Okl., for defendant-appellant E.M. Kunkle.
 B. Hayden Crawford (Kyle B. Haskins, with him on the briefs), of Crawford, Crowe & Bainbridge, P.A., Tulsa, Okl., for defendants-appellants Norman C. Cross, Jr.; Wynema Anna Cross, Executrix of the Estate of Norman C. Cross, Jr.; and Cross and Co.
 Stan P. Doyle (James C. Thomas, with him on the briefs), of Doyle & Harris, Tulsa, Okl., for defendant-appellant Kothe & Eagleton, Inc., a professional corp.
 Peter Van N. Lockwood of Caplin & Drysdale, Chartered, Washington, D.C., (Elihu Inselbuch of Caplin & Drysdale, New York City; William A. Wineberg and Michael R. Simmonds of Broad, Schulz, Larson & Wineberg, San Francisco, Cal., and William H. Hinkle, Tulsa, Okl., with him on the briefs), for plaintiffs-appellees.
 Frank E. Sims, pro se.
 Robert S. Trippet, pro se.
 Before MOORE, ANDERSON and BRORBY, Circuit Judges.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Despite the many issues raised in these consolidated appeals, a single question of law predominates our review. After study of the statutory scheme, the briefs, and record, we conclude the only question before us is whether this action was barred by the untimely filing of the original complaint under Section 13 of the Securities Act of 1933, as amended by the Securities Exchange Act of 1934, 15 U.S.C. Sec. 77m. We hold that it was and, therefore, reverse the judgment and dismiss the complaint.
 
 I. Background
 
 2
 In March 1973, Ivan A. Anixter, Blanche Dickenson, and Dolly Yoshida filed a lawsuit in the Northern District of California alleging Home-Stake Production Company and certain of its officers and directors conspired to violate the federal securities laws in their sale of interests in oil and gas production programs (the Anixter Action). After transfer of this and other individual suits to the Northern District of Oklahoma by the Judicial Panel on Multidistrict Litigation in 1974; amendments of the original complaint in 1974, 1979, and 1985; and the 1977 certification of nine separate classes to proceed with the case; a 1988 trial culminated in a jury verdict for all plaintiff classes and individually consolidated actions. Damages were awarded totalling approximately $130,000,000.
 
 
 3
 According to plaintiffs, liability was predicated on an elaborate and continuing scheme in which Home-Stake Production Company, an Oklahoma corporation engaged in the business of developing oil and gas properties, sold working interests in various program leaseholds, offering investors not only the promise of a return on the investment but also attractive tax benefits through individual deductions of intangible drilling costs (IDC). From 1964 until 1972, Home-Stake established subsidiary corporations, annual Program Operating Corporations (POC), representing separate production programs registered with the Securities and Exchange Commission (SEC) under 15 U.S.C. Sec. 77a. Contrary to Home-Stake's representations, however, investments in one of these POCs were not directed at developing the particular oil property but instead were recirculated and recharacterized,[1] ultimately to be distributed to subsequent POC purchasers in the form of quarterly payments purported to represent income from oil production. In substance, plaintiffs claimed, these were classic Ponzi payments.
 
 
 4
 In response to wary or disgruntled investors who either threatened or filed action, Home-Stake would repurchase investments or settle investor suits.[2] At various times, the IRS audited individual investor's tax returns, questioning the IDC deductions, and summoned Home-Stake representatives to answer questions about accounting methods, record-keeping, and production activities. Finally, in late 1970, the SEC initiated an investigation of Home-Stake.
 
 
 5
 On February 10, 1971, the SEC filed a complaint in the United States District Court for the District of Columbia, (Exh. RD 657), alleging the Home-Stake 1970 POC, Home-Stake Production Company, and certain Home-Stake officers and directors, Robert S. Trippet, E.M. Kunkel, Thomas Landrith, J.D. Metcalfe, H.B. Gutelius, and H.L. Fitzgerald,[3] failed to meet the information requirements of Section 10 of the Securities Act of 1933 (the 1933 Act); overestimated oil reserves and income in the nine oil recovery projects represented to be selected for the 1970 POC; disseminated information in the 1970 registration filed with the SEC which conflicted with program information in unregistered Black Books[4]; filed a post-effective amendment with the SEC distributed to all POC participants containing representations with which it could not comply[5]; and oversold the 1970 POC, investing a substantial part of the $22,000,000 received in short-term notes. The SEC alleged these activities were in violation of Sections 5(a), 5(b), and 17(a) of the 1933 Act and Section 10(b) of the 1934 Securities Exchange Act (the 1934 Act), and Rule 10b-5, 17 C.F.R. Sec. 240.10b-5. The SEC requested the named defendants cease engaging in these activities and offer rescission to public investors who had purchased the 1970 POC. Subsequently, on February 16, 1971, The Wall Street Journal published an article about the SEC investigation and allegations.
 
 
 6
 On April 23, 1971, upon defendants' consent, the district court entered a final judgment permanently enjoining defendants from engaging in the activities specified in the complaint and ordering defendants to make an offer to all 1970 POC participants to return the purchase price plus a pro-rata share of all income earned on the subscription from the date of purchase payment to the date of repayment. (Exh. RD 659). To effect this remedy, the court designated the First National Bank and Trust Company of Tulsa, Oklahoma, trustee of the rescission fund. On April 30, 1971, the trustee mailed each participant in the 1970 POC a copy of the final judgment and a Rescission Offer Prospectus. (Exh. RD 410). Of the more than 900 investors in the 1970 POC, 279 elected rescission.
 
 
 7
 According to plaintiffs' theory, the SEC investigation and suit never exposed the root of Home-Stake's fraudulent operation. They claimed further the resulting settlement and Rescission Offer not only incorporated the continuing fraud but also clothed subsequent activities in the mantle of legitimacy. Home-Stake organized and sold a 1971 and 1972 POC. In 1973, the IRS and SEC again undertook investigations of Home-Stake. Inevitably, Home-Stake's money ran out, its scheme collapsed, and on September 20, 1973, Home-Stake filed a petition for reorganization under Chapter X of the Bankruptcy Act of 1938. The Wall Street Journal reported the event on September 20, 1973.
 
 II. Prior Proceedings
 
 8
 In 1975, after the first amended complaint was filed (Anixter I),[6] the United States District Court for the Northern District of Oklahoma[7] first addressed the statute of limitations issue raised in various defendants' motions to dismiss. In re Home-Stake Prod. Co. Sec. Litig., 76 F.R.D. 337 (N.D.Okla.1975). In that order, the court held the one-year/three-year limitations periods in Section 13 of the 1933 Act, 15 U.S.C. Sec. 77m, "should be tolled in the interests of substantial justice by reason of the extraordinary facts and circumstances alleged by plaintiffs." Id. at 344. To reach this conclusion, the court cited the unusual circumstance of the duration of the fraudulent scheme spanning a ten-year period, exacerbated by Home-Stake's additional fraud on the courts[8] and the SEC[9]. Surely, the court reasoned, these facts mandated applying the equitable principle of tolling to the statute of limitations to prevent defendants from further benefiting from their successful fraudulent concealment and victimizing the investors, the courts, and the SEC. To support this analysis, the court relied on the discovery rule in the doctrine of fraudulent concealment as enunciated in Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874), and Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).[10] Holmberg 's pronouncement that "[t]his equitable doctrine is read into every federal statute of limitation," 327 U.S. at 397, 66 S.Ct. at 585, was reinforced, the district court noted, by subsequent authority establishing that even when Congress announces a limitations period, the federal courts are not powerless "to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose," quoting American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 559, 94 S.Ct. 756, 769, 38 L.Ed.2d 713 (1974); see also Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918). Read in this light, Section 13 did not disclose a congressional intent to ignore equitable principles, the district court surmised. Indeed, it observed, "[t]his Court is cognizant that no legislative history is available to indicate whether Congress intended Section 13 to be an absolute bar to actions under Sections 11 and 12(2) when a defendant has fraudulently concealed his scheme for more than three years." In re Home-Stake, 76 F.R.D. at 344.[11] The district court concluded neither the one-year nor three-year limitations barred the action.[12]
 
 
 9
 Moreover, the district court held the later amendment adding certain defendants in Anixter I was proper because it related back to the timely filing of the Anixter Action under Fed.R.Civ.P. 15(c). Finding defendants added in May 1974 were given fair notice of the action and would not be prejudiced by their late entry, the district court concluded that a liberal application of Rule 15(c) permitted amending the pleadings where the new claims and defendants were "related to the alleged ongoing scheme to defraud Home-Stake investors." Id. at 346.
 
 
 10
 Thus preserved for a trial which was not to begin for another thirteen years, the question of the statute of limitations was conjoined with that of liability in a bifurcated proceeding.[13] The jury returned interrogatories on the questions of equitable tolling and equitable estoppel.[14] In a subsequent order, the district court held, as a matter of law, that plaintiffs did not discover nor should have discovered by the exercise of reasonable diligence the violations until September 1973, presumably when Home-Stake filed for bankruptcy reorganization, and thus were not time-barred under Section 13 "because of defendants' fraudulent concealment of plaintiffs' causes of action and the doctrine of equitable tolling." (Order, Oct. 17, 1988, Tab 2597). Alternatively, the court held defendants equitably estopped from raising the defense of the statute of limitations based on the jury's findings that defendants "intentionally thwarted and defeated the federal courts, the SEC, and the IRS in their efforts to administer and enforce the laws of the United States...." Id. The district court later denied defendants' motion for an interlocutory appeal on the issue of the statute of limitations. (Order, Nov. 16, 1988, Tab 1609).
 
 
 11
 In this appeal, joint defendants, Wynema Anna Cross, Executrix of the Estate of Norman C. Cross, Jr.; Cross and Company; Kothe & Eagleton, Inc.; and E.M. Kunkel; and individual defendants, Robert S. Trippet, pro se, formerly chief executive officer of Home-Stake; and Frank Sims, pro se, formerly Home-Stake vice-president, challenge these orders. Although numerous issues are raised, the application of the statute of limitations is dispositive.
 
 III. Section 13
 
 12
 Time and zealous lawyering have unnecessarily obfuscated the limitations issue before us, blending distinct and discrete doctrines into a fungibility that creates an exception to Section 13 that virtually swallows the rule.[15] It is time to set the matter straight and attempt to restore this case to its proper place in securities jurisprudence. Our task has been simplified and the result bolstered by the Supreme Court's recent decision in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (hereinafter Lampf, Pleva ).
 
 
 13
 We, then, begin at the beginning[16] with the language of Section 13, 15 U.S.C. Sec. 77m, the statute of limitations for express causes of action under Sections 11, 12:
 
 
 14
 No action shall be maintained to enforce any liability created under section 11 or 12(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 12(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 11 or 12(1) of this title more than three years after the security was bona fide offered to the public, or under section 12 of this title more than three years after the sale.
 
 
 15
 Section 13 sets forth a statute of limitations framed by a statute of repose.[17] Under this provision, plaintiffs have one year from the date of discovery of a violation to file an action. Defendants who may be liable for such a violation, however, are safe from any liability arising from the violation if the action is not brought within three years of the violation itself. Three undisputed principles exist within the statute. First, Section 13 is clear on its face: discovery starts the one-year limitation running. Second, the phrasing of the discovery rule incorporates the doctrine of fraudulent concealment, pegging accrual of the cause of action for a concealed fraud to the date "after such discovery should have been made by the exercise of reasonable diligence."[18] Third, while the Section 13 discovery rule incorporates the doctrine of fraudulent concealment, the one-year-after-discovery provision will be extended "in no event ... more than three years after the security was bona fide offered to the public, or ... after the sale." 15 U.S.C. Sec. 77m.
 
 
 16
 The one-year/three-year provisions are not disjunctive. If a putative plaintiff knows or comes to know of the existence of an actionable violation, this person must file suit within one year of the day of discovery. If a putative plaintiff should have discovered the cause of action, suit must be filed within one year of the day the discovery should have been made. If discovery does not occur or should not have occurred within three years of the date a "security was bona fide offered to the public," the cause of action lapses and cannot be enforced for any reason. To comply with Section 13, the plaintiff must "plead and prove facts showing that his claim was timely with respect to both the one year and three year limitations periods." J. Hicks, Civil Liabilities: Enforcement & Litigation Under the 1933 Act Sec. 6.10, at 6-274 (1989).
 
 
 17
 What is critical to understanding Section 13 as a statute of repose, particularly in light of this case, is the recognition that, as such, not only is the remedy barred, but, also, the liability itself is extinguished. "Section 13 is substantive, rather than procedural; it establishe[s] an essential ingredient to a private cause of action." Id. Thus, an untimely complaint must be dismissed as a matter of law.
 
 
 18
 Although this reading is clear from the language of Section 13, the legislative history reinforces the "conclusion that the three-year period is an outside absolute period." 3A H. Bloomenthal, Securities and Federal Corporate Law Sec. 8.31[m], at 8-156.61 (1991) (hereinafter Bloomenthal).[19] The Congressional Record memorializes the Senate debate focusing on whether to include one or two limitations periods and the lengths of those periods. See 1 Federal Securities Laws--Legislative History 1933-1982 (1983) prepared by the Securities Law Committee of the Federal Bar Association.[20] What concerned Senator Norris about the two limitations periods was their delaying effect on settling cases which otherwise would have to be filed immediately upon discovery of the fraud. Senator Byrne, however, who argued for the two limits with an absolute outer bar, noted that since Section 12 litigation might involve corporate directors, "it would deter men from serving on boards of directors, because the man might die and his estate would be liable possibly 8 years after his death to a suit brought by an individual." Id. at 1010. The record of the debate establishes an awareness of the difference between easily discovering a fraud and the more difficult problem when the fraud has been concealed. However, there was no disagreement over the need for an absolute bar. As Senator Barkley stated, "As I said, I am not concerned with whether the limit is fixed at 1 year or 2 years after the discovery, but I think there ought to be a limitation after the discovery has been made with the limit of 5 years." Id. at 1011. Senator Barkley also observed, "I think we have to consider this proposed statute of limitations in a little different light from that in which we consider ordinary statutes of limitations." Id. The 1933 Act included the one-year/five-year scheme, which was amended in 1934, shortening the five-year outer limit to three years.
 
 
 19
 Of this debate, Judge Easterbrook remarked, "The legislative history in 1934 makes it pellucid that Congress included statutes of repose because of fear that lingering liabilities would disrupt normal business and facilitate false claims. It was understood that the three-year rule was to be absolute." Norris v. Wirtz, 818 F.2d 1329, 1332 (7th Cir.), cert. denied, 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987). Indeed, in quoting portions of this debate, the Second Circuit opined, it even "strongly suggests that Congress, if it had provided an express right of action under Secs. 10(b) and 14, would have adopted a one-year/three-year period." Ceres Partners v. GEL Assocs., 918 F.2d 349, 363 (2d Cir.1990).[21]
 
 
 20
 Thus, under Section 13, if a plaintiff has notice of a violation, the one-year limitation is triggered. If plaintiff has no notice, Section 13 functions as a statute of repose, and the violation is actionable only within the three-years subsequent to the date of offering. Consequently, no concept of equitable tolling can have validity beyond the three-year period of repose because Congress did not allow for breaching the Chinese Wall it intentionally created. Only this construct "is consonant with the legislative scheme." American Pipe & Constr. Co., 414 U.S. 538 at 558, 94 S.Ct. 756 at 768. As the court noted in Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385, 1395 (7th Cir.1990):
 
 
 21
 Courts say that equitable tolling does not apply under Sec. 13, but this is not strictly accurate. It is better to say that equitable tolling and related doctrines do not extend the period of limitations by more than the two-year grace period Sec. 13 allows. Congress did not obliterate these valuable doctrines so much as it set bounds on the length of delay.[22]
 
 
 22
 While equitable tolling focuses on when the statute of limitations begins to run, "[e]quitable estoppel acknowledges that the statute has run, but is invoked to estop the defendant from asserting that defense because a defendant's actions lulled a plaintiff into forbearing bringing suit within the period of limitations." 3A Bloomenthal, Sec. 8.31[o], at 8-156.68. We have noted "[e]quitable estoppel arises where the parties recognize the basis for suit, but the wrongdoer prevails upon the other to forgo enforcing his right until the statutory time has lapsed." Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1043 n. 7 (10th Cir.1980).[23] Indeed, the congressional debate addressed the problem of parties' attempting to settle or negotiate a claimed violation in the face of the unfairness of the running of the limitations period. Emphatically, Congress opted for the absolute bar.
 
 
 23
 While there may be circumscribed settings in which the doctrine of equitable estoppel might apply[24] to claims governed by Section 13,[25] we believe the more accurate analysis excludes the application of this doctrine when the consequence operates to trump a clear outer limit intended by Congress. "Unless the 'in no event more than three' language cuts off claims of tolling and estoppel at three years, however, it serves no purpose at all--what other function could be served by such language in a statute that starts the time on discovery?" Short v. Belleville Shoe, 908 F.2d at 1391.[26] We therefore conclude that the doctrine of equitable estoppel is not available to avoid the statute of repose established by Section 13.[27]
 
 
 24
 Indeed, except for Home-Stake,[28] there is virtual uniformity in holding the three-year limit as an absolute bar to suit. See, e.g., Short v. Belleville Shoe, 908 F.2d at 1393; S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1308 (9th Cir.1982); Summer v. Land & Leisure, Inc., 664 F.2d 965, 968 (5th Cir. Unit B Dec.1981), cert. denied, 458 U.S. 1106, 102 S.Ct. 3485, 73 L.Ed.2d 1367 (1982).[29] This harmony effectuates the remedial scheme created to enforce the rights given by the 1933 Act.
 
 
 25
 In the Anixter Action, plaintiffs alleged they did not discover defendants' fraud until March 1973. Nevertheless, without notice, plaintiffs had only three years from the date plaintiffs purchased their POCs in which to file suit. Thus, we conclude as a matter of law, plaintiff class representatives for the 1964, 1965, 1966, 1967, 1968, and 1969 POCs, William Dennler, John D. Lockton, Ted Westfall, William Mortenson, William D. Robertson, and Thomas Thorner, respectively, were barred from suit by the three-year statute of repose.[30] Neither equitable tolling nor equitable estoppel can salvage their claims.
 
 
 26
 The more difficult issue remains, however, whether suit was timely filed by the 1970, 1971, and 1972 class representatives, William Grohne, Beatrice Warren,[31] and Joseph C. Bennett. That question can only be answered by determining when plaintiffs knew or should have known with the exercise of diligence that fraud was afoot.
 
 
 27
 In the original complaint[32] plaintiffs alleged fraudulent concealment:
 
 
 28
 Plaintiffs had no knowledge of the alleged combination and conspiracy or any facts which might have led to the discovery thereof until March of 1973, at which time plaintiffs were informed that the Internal Revenue Service had determined that Home-Stake Production Company had not expended funds received by it for the purpose of conducting intangible drilling, but had converted these funds to its own uses. Plaintiffs could not have uncovered the combination and conspiracy at an earlier date by the exercise of due diligence, inasmuch as the unlawful acts had been fraudulently concealed by defendants through its resort to secrecy to avoid detection, by its repeated statements that substantial oil production was being achieved for each of the programs and the payments which the participants received with respect to their program investments which purported to be income from the production of oil.
 
 
 29
 This allegation was revised in successive amended complaints and later subtitled, Equitable Tolling:
 
 
 30
 By reason of the extraordinary nature of the facts alleged above ... and in order to fully effectuate the purposes of the Securities Acts the statute of limitations applicable to the causes of actions brought herein should be tolled at least until September 20, 1973 based upon established principles of equity.
 
 
 31
 Our analysis has been complicated by the paucity of specific evidence provided in the record to delineate when specific claims arose.[33] Nevertheless, because the district court applied both equitable doctrines to these claims as well, we are constrained to presume the court found the statute of limitations had run. However, while this observation may explain the preservation of the 1964 through 1969 suits when they were clearly barred, it remains insufficient to understand why the 1970, 1971, and 1972 suits survived the statutory discovery rule but now must fail.
 
 
 32
 Notice is the key to our analysis, and merely "inquiry notice" will do. DeBruyne v. Equitable Life Assur. Soc. of the United States, 920 F.2d 457, 466 (7th Cir.1990). The discovery period, "one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence," does not "commence only when a plaintiff has full knowledge of the existence of a claim. On the contrary, the one-year limitations period begins to run even when a plaintiff is placed on 'inquiry notice' of possible misrepresentations." Id. at 466 (citations omitted). The Seventh Circuit has characterized those facts triggering inquiry notice as "sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved in the sale." Cook v. Avien, Inc., 573 F.2d 685, 697 (1st Cir.1978).
 
 
 33
 Kennedy v. Josephthal & Co., 814 F.2d 798 (1st Cir.1987), is instructive. In that case, plaintiffs purchased shares of a limited partnership involved in the mining and sale of coal. The Offering Memorandum indicated not only the high degree of risk but also, given all the risks and contingencies, the partnership "would, in all likelihood, utterly fail as a viable coal mining operation." Id. at 801. In the face of these written representations, plaintiffs claimed to rely on the oral statements of defendant's representative limning a more positive, profitable, and safe venture. Recognizing plaintiffs may have had mixed motives in their purchase, including that of a tax shelter which "[is] sometimes more useful to investors than another real investment," id. at 801-02, the court nevertheless exacted an objective standard of reasonable diligence. In response to plaintiffs' claim they could not have discovered the fraud earlier because of defendants' continuing fraudulent misrepresentations and omissions, the court instructed, "Appellants need not, however, have fully discovered the nature and extent of the fraud before they were on notice that something may have been amiss. Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." Id. at 802.[34] See also State of Ohio v. Peterson, Lowry, Rall, Barber & Ross, 651 F.2d 687 (10th Cir.), cert. denied, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981).
 
 
 34
 Thus, Section 13 holds plaintiffs to a stringent standard of proof.[35] Toombs v. Leone, 777 F.2d 465, 468 (9th Cir.1985). Against this standard, plaintiffs, who had purchased securities from 1970 through 1972, averred they were placed on notice in March 1973 when the IRS represented it would disallow their IDC deductions upon its discovery that Home-Stake had not expended funds on drilling wells. To accept this event to constitute plaintiffs' inquiry notice, we would have to ignore the fact that the SEC filed a complaint in February 1971 alleging violations of the registration and antifraud provisions of the securities laws, after which each plaintiff received notice of the court order and rescission remedy.[36] Surely, the order, the Rescission Offer, and The Wall Street Journal article of February 11, 1971, represent "great glowering clouds," Kennedy v. Josephthal, 814 F.2d at 802, sufficient to put plaintiffs on notice that something was amiss. See also Bush v. Rewald, 619 F.Supp. 585, 602 (D.Haw.1985).
 
 
 35
 The Rescission Offer told recipients to "rely solely on the information contained in this prospectus." (Exh. RD 410) (emphasis added). All other information was to be "disregarded entirely." The document stated:
 
 
 36
 BY THIS PROSPECTUS HOME-STAKE 1970 PROGRAM OPERATING CORPORATION ("OPERATOR") HEREBY OFFERS TO RESCIND ALL PAYMENTS MADE BY PARTICIPANTS ON UNITS OF PARTICIPATION ("UNITS") IN ACCORDANCE WITH THE CONSENT DECREE OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA MORE FULLY DESCRIBED UNDER THE HEADING "RESCISSION OFFER" HEREIN. UNDER THE TERMS OF THE OFFER, PARTICIPANTS MAY ELECT TO RECEIVE THE RETURN OF THEIR PAYMENTS MADE IN 1970 AGGREGATING $23,080,000 FOR SUBSCRIBED UNITS PLUS INTEREST, AS MORE FULLY DESCRIBED UNDER THE HEADING "RESCISSION OFFER" HEREIN.
 
 
 37
 Investors were offered the return of their investment plus interest. In contrast to all of these written materials, R.S. Trippet, Home-Stake's CEO, wrote his own memos trivializing the investigation and suit and castigating the SEC.[37] Against these representations, individual investors made their own decisions based as much on tax considerations as investment concerns.
 
 
 38
 For example, William Grohne, the 1970 class representative, acknowledged he received the Rescission Offer and considered it. He decided not to rescind because it would have cost him $2,000 in additional taxes. (R. XV, 1809). Although he was concerned that programs were going forward without seeing his quarterly payments reflect increases from the larger oil production, he did not act.
 
 
 39
 Beverly Warren, a retired business executive who represented the 1971 class,[38] stated he scanned the Rescission Prospectus and thought it looked only "a little more severe" than a normal risk prospectus. (R. XVI, 1919). Acknowledging the high degree of risk involved in these ventures, he stated his decision to purchase a POC was based on both the investment and tax advantages, although without the tax incentives, he would not have invested. (R. XVI, 1936).
 
 
 40
 Finally, Joseph Bennett, the 1972 class representative, with undergraduate and graduate degrees in mineral engineering and mineral economics, first learned of the Home-Stake program in October 1972 while exploring investments which would have the additional feature of deductibility to offset a 1972 stock bonus he had received. Asked on direct examination if he had read the information in the 1972 Prospectus about the 1971 legal proceedings, Mr. Bennett responded he considered it a hurdle to overcome before committing to the investment. After speaking to his broker, he concluded Home-Stake had gotten its wrist slapped for aggressive overselling of the 1970 POC but was convinced the SEC was satisfied. (R. XV, 1755). Like other Home-Stake investors, Mr. Bennett's income was substantial. At his 60-65% tax bracket, a $20,000 investment would, he said, provide $13,000 in tax savings although he understood the oil and gas business involved a high degree of risk.
 
 
 41
 Attempting to place this individual testimony on the larger stage of the ongoing plot, plaintiffs postulate the underlying Ponzi scheme was concealed by more intricate machinations to deceive the SEC and the United States District Court for the District of Columbia. When an investor, in fact, became suspicious, plaintiffs urge, Home-Stake bought him out or permitted him to roll the investment over into another POC.[39] Discovery was impossible until the entire scheme collapsed, they argued.
 
 
 42
 According to plaintiffs' theory, when defendants' fraud was passive, that is in the manipulation of the Ponzi scheme itself, equitable tolling suspended the statute of limitations until Home-Stake collapsed. Alternatively, plaintiffs asserted, and the court apparently embraced, the theory that the doctrine of equitable estoppel redressed defendants' active fraud in deceiving the SEC, IRS, and courts.[40] Fueling application of either doctrine, they insist, is the uniqueness of the facts of this case, a debacle that Section 13 could not have contemplated.
 
 
 43
 However, the uniqueness of Home-Stake's fraud does not mandate a different application of Section 13 when plaintiffs seek express securities remedies. At the very core of fraud is an act of concealment. Were we to follow plaintiffs' argument to its logical conclusion, there would be no statute of limitations in a fraud action because of the perpetrator's essential need to escape detection. That is why Congress enacted a statute of repose. Moreover, carving out a special exception to Section 13 for a "secondary act" of fraud or "active concealment" would eliminate the one-year statute of limitations and entirely nullify the effect of the statute of repose.
 
 
 44
 Instead, Section 13 exacts more of the prudent investor. "After the plaintiff has notice, there is a strong federal interest in requiring him to file suit quickly." Roberts v. Magnetic Metals Co., 611 F.2d 450, 463 (3d Cir.1979) (Seitz, C.J., dissenting), quoted in In re Data Access Systems Sec. Litig., 843 F.2d 1537, 1546 (3d Cir.), cert. denied, sub nom. Vitiello v. I. Kahlowsky & Co., 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988).
 
 
 45
 The SEC provided notice to Home-Stake investors that certain violations of the securities laws were alleged, and based on those violations, Home-Stake agreed to rescind the 1970 POC. In the face of that information, individual investors, as already noted, made their own calculations, perhaps based on the Rescission Prospectus or R.S. Trippet's assurances. However, Section 13 does not contemplate weighing individual investment concerns and tax considerations. "Prudent investors almost always can sniff out fraud (or enough smoke to justify litigation) within three years. Section 13 cuts off only the claims of the most trusting or somnolent--or the most wily, those who wanted to wait as long as possible." Short v. Belleville Shoe, 908 F.2d at 1392.
 
 
 46
 The claims of class representatives William Grohne, 1970 POC, and Beverly Warren, 1971 POC, were included in the March 1973 complaint. Although each knew about the 1971 SEC investigation and settlement, both chose neither to investigate further nor to rescind based on personal investment decisions. Nevertheless, for each, the one-year discovery period must begin to run from April 30, 1971, when notice of the court's order and the Rescission Offer was sent. However incomplete that notice might have been, as plaintiffs allege, it encompassed enough of a "storm warning" to start the clock as a matter of law. Their complaint, filed on March 30, 1973, was thus untimely.
 
 
 47
 Consequently, Joseph Bennett's claim, added by amendment to the Anixter Action on May 24, 1974, is tethered to a nullity. Indeed, had the Anixter Action been timely, Mr. Bennett would have had one year from its filing or until March 30, 1974, to have filed his complaint on time. Surely the filing of the Anixter Action was notice sufficient to trigger the one-year statute of limitations. Peterson, Lowry, 651 F.2d at 687.
 
 IV. Section 10(b)
 
 48
 Defendants challenged plaintiffs' Section 10(b) and Rule 10b-5 claims as untimely under both the Oklahoma statute of limitations for fraud and the one-year/three-year uniform federal scheme, as announced by the Third Circuit in Data Access, 843 F.2d 1537. Our disposition of this issue is now guided by the Supreme Court's recent decision resolving a split among the Circuits over whether the state borrowing doctrine is the appropriate vehicle for determining the limitary period for implied federal securities causes of action. Lampf, Pleva, 111 S.Ct. 2773. The Court concluded the proper limitations period for Section 10(b) and Rule 10b-5 claims is the more closely analogous uniform federal period for express causes of action contained in the 1933 and 1934 Acts.
 
 
 49
 In Lampf, Pleva, from 1979 through 1981, plaintiffs invested in certain limited partnerships to develop computer hardware and software with "the expectation of realizing federal income tax benefits therefrom." Id. The partnerships failed, and in 1982 and 1983, the IRS notified plaintiffs of its investigation of the partnerships. Subsequently, the claimed tax benefits were disallowed because of overvaluation of partnership assets and lack of a profit motive. On November 3, 1986, and June 4, 1987, plaintiffs filed complaints in federal court alleging they were induced to invest in the partnerships by misrepresentations in the offering memoranda in violation of Section 10(b) and Rule 10b-5. Plaintiffs stated they only discovered the alleged misrepresentations in 1985 when the IRS disallowed their deductions. The district court disagreed and dismissed their complaints upon finding plaintiffs were on inquiry notice as early as 1982 when they became aware of the possibility of fraud and misconduct in the partnerships. The Ninth Circuit reversed on the ground that unresolved factual issues precluded summary judgment on the question of when plaintiffs discovered or should have discovered the alleged fraud. Reitz v. Leasing Consultants Assocs., 895 F.2d 1418 (9th Cir.1990).
 
 
 50
 Reversing the Ninth Circuit, the Supreme Court rejected the long-standing judicial practice of looking to state analogues to a securities fraud action and borrowing the appropriate state statute of limitations for that cause of action. Additionally, the Court rejected the Solicitor General's argument to apply the federal limitation of Section 13 but with the five-year statute of repose established for Section 20A, 15 U.S.C. Sec. 78t-1(b)(4).[41] Instead, the Court reasoned, quoting DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983),
 
 
 51
 [i]n the present litigation, there can be no doubt that the contemporaneously enacted express remedial provisions represent "a federal statute of limitations actually designed to accommodate a balance of interests very similar to that at stake here--a statute that is, in fact, an analogy to the present lawsuit more apt than any of the suggested state-law parallels."
 
 
 52
 Id. The Court held the one-year/three-year scheme of the 1933 and 1934 Acts was the more appropriate limitations period for Section 10(b).[42]
 
 
 53
 Furthermore, the Court rejected plaintiffs' argument that the express period would be subject to the doctrine of equitable tolling. "Notwithstanding this venerable principle, it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1-and-3-year structure.... The 3-year limit is a period of repose inconsistent with tolling." Lampf, Pleva, 111 S.Ct. at 2782. Therefore, the Court held plaintiffs' claims were untimely.
 
 
 54
 Thus, Hackbart v. Holmes, 675 F.2d 1114 (10th Cir.1982), and Bath v. Bushkin, Gaims, Gaines and Jonas, 913 F.2d 817 (10th Cir.1990) (per curiam), no longer govern our analysis of the applicable limitary period for plaintiffs' Section 10(b) claims in our case. Consequently, based on our prior discussion of Section 13 to plaintiffs' express causes of action, we hold plaintiffs' Section 10(b) and Rule 10b-5 claims are untimely and must be dismissed.
 
 V. Conclusion
 
 55
 In their joint brief and oral argument, plaintiffs urged we compare the levels of inequity in reaching a result in this case. The federal securities scheme sought to ensure full disclosure and prohibit manipulative and deceptive practices, Ernst & Ernst v. Hochfelder, 425 U.S. 185, 204-05, 96 S.Ct. 1375, 1386-87, 47 L.Ed.2d 668 (1976), not by comparing levels of inequity but by determining whether the cause of action asserted falls within that remedial scheme. Although our result appears the more draconian given the eighteen years consumed in reaching it, we cannot overlook Congress' clear design in setting that outer limit which ultimately snared plaintiffs' claims. Any alteration of that design is committed solely to the body that enacted it and not the court.
 
 
 56
 REVERSED.
 
 
 
 [1]
 For example, plaintiffs set forth evidence that of the nearly $35,000,000 invested in the 1968 and 1969 POCs, only $500,000 could be attributed to development
 
 
 [2]
 In 1968, for example, an action was filed in the Northern District of Oklahoma alleging violations of the securities laws under Sections 10(b) and 17(a) as well as common law fraud and other claims. The case was certified as a class action, George H. McFadden & Bro., Inc. v. Home-Stake Prod. Co., 295 F.Supp. 590 (N.D.Okla.1968). However, the class representative subsequently accepted the settlement offered by Home-Stake and withdrew the motion for class certification. The district court dismissed the action with prejudice
 
 
 [3]
 Each of these defendants was again named in the 1973 Anixter Action, which also added the 1965 and 1971 POCs and Norman C. Cross, Jr
 
 
 [4]
 The SEC's discovery of these Black Books or Program Books was one red flag which triggered the 1970 SEC investigation. The Black Books were not registered with the SEC but were mailed to all POC participants. Program Books contained descriptions of specific oil recovery programs, estimates of projected returns, projected program budgets, etc
 
 
 [5]
 For example, the 1970 POC involved the development of certain Venezuelan oil reserves, a highly risky venture given Venezuela's threat to nationalize the industry. Home-Stake represented that it would indemnify 1970 POC purchasers in the event of expropriation
 
 
 [6]
 Plaintiffs amended the Anixter Action on May 24, 1974, and designate this first amended complaint as Anixter I. Anixter I added plaintiff classes for the 1964 and 1972 POCs and certain defendants. Defendants, Kothe & Eagleton, Inc., a Tulsa law firm (K & E), and Norman C. Cross, a Tulsa accountant, doing business as Cross & Co., were also named in Anixter I
 
 
 [7]
 Judge George H. Boldt, Senior United States Judge for the District of Washington, presided by designation over the early stages of the action. Later, Judge H. Dale Cook of the Northern District of Oklahoma was assigned the case, followed by Judge Manual Real of the Northern District of California, who sat by designation, and handled most of the pretrial matters. Judge Real tried the case
 
 
 [8]
 The court cited Home-Stake's settling the 1968 George H. McFadden class action as an example of fraud on the court
 
 
 [9]
 The court observed that Home-Stake "conceded technical violations of the securities laws, but failed to disclose that little or no oil from its prior programs had been produced, that its 1965 through 1969 programs had been oversold, or that the assets of its financial statement were nonexistent and that Home-Stake was insolvent." 76 F.R.D. at 342
 
 
 [10]
 In Holmberg, the Court refused to apply the state statute of limitations to an action to enforce a federally created equitable right, reminding:
 And so this Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."
 327 U.S. at 397, 66 S.Ct. at 585 (quoting Bailey v. Glover, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874)).
 
 
 [11]
 While acknowledging neither Bailey, 88 U.S. at 342, nor Holmberg involved Section 13, the district court believed the wording of the limitations at issue in these cases was "equally as absolute." 76 F.R.D. at 344. In Holmberg, because there was no federal statute of limitations governing claims under the Federal Farm Loan Act, the question was whether to read the equitable doctrine into the borrowed state statute of limitations. The Holmberg court, however, stated, "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive. The rub comes when Congress is silent." 327 U.S. at 395, 66 S.Ct. at 584 (emphasis added). The statute of limitations in Bailey, 88 U.S. at 342, was contained in the Bankrupt Act of 1867:
 [B]ut no suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest, touching the property or rights of property aforesaid, in any court whatsoever, unless the same shall be brought within two years from the time of the cause of action accrued for or against such assignee.
 (quoted by the Court in Bailey, 88 U.S. at 344). The Court stated that concealed fraud is an exception on purely equitable principles, "provided suit is brought within proper time after the discovery of the fraud." Id. at 348.
 
 
 [12]
 At that stage of the pretrial proceedings, the district court appeared reluctant to dismiss the case given plaintiffs' factual allegations
 
 
 [13]
 In its pretrial order of January 28, 1987, the district court rescinded its prior bifurcation order and ruled that the question of the statute of limitations would not be tried separately
 
 
 [14]
 The interrogatories on equitable estoppel asked the jury to decide whether plaintiffs had proved by a preponderance of evidence that a particular class representative, individually and as a representative of the class, "did not discover nor should have discovered by the exercise of reasonable diligence" that by September 1973, the defendant violated, for example, Rule 10b-5. Alternative dates were also listed. The special interrogatories on equitable estoppel asked the jury whether each defendant "intended to and did thwart and defeat" the federal courts, the IRS, and SEC in their respective judicial and administrative purposes
 
 
 [15]
 We note parenthetically that In re Home-Stake is recognized in the treatises as the "sole exception" to the three-year absolute bar under Section 13. 3A H. Bloomenthal, Securities and Federal Corporate Law Sec. 8.31[m], at 8-156.62 (1991) (hereinafter Bloomenthal); see also 1 T. Hazen, The Law of Securities Regulation Sec. 7.5.4, at 341 (2d ed. 1990) (hereinafter Hazen); 5 A. Bromberg & L. Lowenfels, Securities Fraud & Commodities Fraud Sec. 11.9(200), at 11:204 (1990) (hereinafter Bromberg). Similar distinctions appear in case law. Home-Stake 's application of equitable tolling has been distinguished on the ground that the fraud was singularly pervasive and long-standing. Gale v. Great Southwestern Exploration, 599 F.Supp. 55, 57 (N.D.Okla.1984). Alternatively, Home-Stake is cited for its application of equitable estoppel to Section 13. For example, Zola v. Gordon, 685 F.Supp. 354, 361 (S.D.N.Y.1988), concluded that since equitable tolling could not overcome the three-year absolute bar, the case must stand for the proposition that equitable estoppel could trump Section 13
 
 
 [16]
 "Begin at the beginning," the King said, very gravely, "and go on till you come to the end: then stop." Lewis Carroll, Alice's Adventures in Wonderland
 
 
 [17]
 At the outset, we acknowledge the considerable discussions in the case law and commentary on Section 13 as a statute of limitations, a statute of repose, or a combination of the two. E.g., 1 T. Hazen, Sec. 7.5.4, at 335. Although the two concepts differ, the terminology has become interchangeable
 
 
 [18]
 In Cook v. Avien, Inc., 573 F.2d 685, 695 (1st Cir.1978), the court observed, "The doctrine of fraudulent concealment is the common law counterpart of the 'discovery' standard prescribed by Sec. 13 to limit actions brought under Sec. 12(2) of the 1933 Act. Thus, the running of both statutes of limitations is triggered by identical considerations."
 
 
 [19]
 Albeit resort to legislative history is unnecessary when the statute is clear on its face, United States v. Oregon, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961), it is particularly helpful here to understand the import of the language at issue
 
 
 [20]
 Contrary to the district court's surmise, the legislative history is remarkably complete and helpful
 
 
 [21]
 In Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Court noted this observation with approval
 
 
 [22]
 In its recent ruling under Section 10(b), the Court has bolstered this conclusion. "Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period." Lampf, Pleva, 111 S.Ct. at 2782
 
 
 [23]
 In this same footnote, the Aldrich court agreed with the Seventh Circuit in Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067, 1070 (7th Cir.1978), which had stated, "equitable estoppel may prevent reliance on a statute of limitations which nevertheless cannot be tolled by other equitable principles." Aldrich, in dicta, however, only left "open the possibility of equitable estoppel" but stated that under the limitations provision of the Interstate Land Sales Full Disclosure Act (ILSFDA), equitable tolling could not extend suit past the three-year bar. Aldrich v. McCulloch Properties, 627 F.2d 1036, 1043 n. 7 (10th Cir.1980)
 
 
 [24]
 Katz v. Amos Treat & Co., 411 F.2d 1046 (2d Cir.1969), is such a case. In another, Bomba, 579 F.2d at 1067, a case under the ILSFDA, which contains a similarly worded statute of limitations, defendant promised to refund plaintiffs' purchase money for two lots on which defendant had failed to produce the proper reports. Although he offered rescission, defendant never fulfilled his promise to pay until after the statute of limitations had run. Under Bomba, "absent some affirmative indication that Congress expressly intended to exclude the application of equitable estoppel," id. at 1070, the federal doctrine may be read into every federal cause of action. See Cange v. Stotler and Co., 826 F.2d 581 (7th Cir.1987) (equitable estoppel applies to actions under Commodity Exchange Act)
 
 
 [25]
 In his treatise, Bloomenthal attempts to delineate conduct other than that involved in the underlying claim as the distinguishing factor. 3A Bloomenthal, Sec. 8.31[o], at 8-156.68. Nevertheless, given the bright line Congress set down, we believe the more consistent approach must reject infiltrating these equitable doctrines into Section 13. There is simply no other way to read Section 13 and preserve its meaning
 
 
 [26]
 In dicta, the Seventh Circuit left open the question whether equitable estoppel could postpone the running of the one-year period after discovery but was emphatic about the consequence of the three-year outer limit
 
 
 [27]
 Although Lampf, Pleva did not address this issue, its holding the doctrine of equitable tolling inapplicable to the one-year/three-year limitary structure would necessarily foreclose application of equitable estoppel as well
 
 
 [28]
 Plaintiffs also rely on Katz v. Amos Treat & Co., 411 F.2d at 1046, which is typically cited for its atypical reading of Sec. 13. In that case, plaintiff purchased unregistered securities in 1960 upon the assurance the securities would soon be registered. Although plaintiff did not file the action under Sec. 12(1) until 1962, the court did not foreclose suit on the ground that defendant's continued assurances that the securities would be registered abated the notice date
 
 
 [29]
 During oral argument, counsel for plaintiffs stated he was unaware of any case characterizing Section 13 as a statute of repose, making it "self-operative" to extinguish liability. "I am not aware of any such case that holds that, and I don't see any policy reason why this court should do it, I don't see why this court should reach out and try and make Section 13 such a draconian provision." Transcript of Oral Argument, at p. 64
 
 
 [30]
 Although we shall discuss the statute of limitations for their claims under Rule 10b-5, these plaintiffs failed to timely preserve that action as well. In this group, we also include the individual actions appended to the nine class actions when all of these suits were consolidated. See Pretrial Order, Jan. 29, 1988, Tab PTO, pp. 7-12
 
 
 [31]
 The original representative for the 1971 POC, Beverly Warren, died, and his widow became the class representative
 
 
 [32]
 Although the original complaint was not included in the record, the court, on its own motion, requested supplementing the record
 
 
 [33]
 For example, we find no cancelled checks or other documentation to establish when each class representative actually purchased an interest
 
 
 [34]
 The court found appellants were on inquiry notice at the time they examined the Offering Memorandum and compared it to their broker's conflicting statements. Having purchased their securities in December 1979, appellants thus had to sue by December 1980. Their 1981 suit was untimely
 
 
 [35]
 In his treatise, Bromberg states, "By charging plaintiff with constructive knowledge, Sec. 13 is stricter than his basic cause of action under either Secs. 11 or 12(2), which charges him only with actual knowledge." 4 Bromberg, Sec. 8.4(318), at 204.16
 
 
 [36]
 Purchasers of the 1971 POC had notice of the Rescission Offer in the 1971 Prospectus. We recognize William Bennett, the 1972 class representative, did not receive that specific notice. However, the record reflects he read the 1972 Prospectus which contained information about the 1971 SEC action and settlement, and made inquiry
 
 
 [37]
 One Trippet memorandum referred to the government's tyranny in investigating and muzzling Home-Stake. The "Tale of Two Cities," Washington, D.C., and Tulsa, Oklahoma, Trippet wrote, continued to reveal "the tyranny of the state over the individual." (Exh. DX 169). In another letter to Thomas Thorner, the 1969 class representative, Trippet explained that the word "fraud" was used to produce an "emotional semantic reaction to its own advantage to evoke Pavlovian responses in the readers and listeners when it uses the same word." (Exh. DX 167). Trippet, characterizing the alleged violations as technical, categorically denied them "except for a couple of the parking ticket variety," and called the SEC's oil reserve estimates misleading, made by SEC "testifying engineers" who are "poor-as-church mice punks making about $18,000 per year and lucky to be doing that, because they can't make anyone's team." (Exh. DX 167)
 
 
 [38]
 As noted earlier, at the time of trial, Mr. Warren was deceased. His deposition was read into the record. Mr. Warren had purchased units in the 1964, 1965, 1966, 1967, and 1968 POCs, three units in the 1969 POC, two units in the 1970 POC, three units in 1971, and three units in 1972
 
 
 [39]
 Although plaintiffs insist the evidence of settling claims was integral to the continuing scheme to defraud, we think it cuts both ways. Alternatively, this evidence could show Home-Stake simply wanted to satisfy its investors. Once recompensed, what interest did the investor have in sleuthing the scam? Moreover, the investor received generally what he would have from filing suit, recovery of the consideration paid plus interest. The only flaw in this approach was that the money ran out. In neither case, however, does equitable estoppel translate this conduct into a fraud on the court. If an investor chooses to settle his case, that choice, without more, is not fraudulent
 
 
 [40]
 Plaintiffs continually refer to defendants' fraud on the "courts" without specifying the act of fraud on the particular court. Moreover, their use of the terminology "fraud on the court" is quite generic, encompassing actions between parties unrelated to a court proceeding. However, "[f]raud on the court (other than fraud as to jurisdiction) is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir.1985)
 
 
 [41]
 Section 20A(b)(4) of the 1934 Act, added by the Insider Trading and Securities Fraud Enforcement Act of 1988, provides: "No action may be brought under this section more than 5 years after the date of the last transaction that is the subject of the violation."
 
 
 [42]
 Ceres Partners v. GEL Assocs., 918 F.2d 349 (2d Cir.1990); Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385 (7th Cir.1990); and In re Data Access Sys. Sec. Litig., 843 F.2d 1537 (3d Cir.), cert. denied, sub nom. Vitiello v. I. Kahlowsky & Co., 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), had reached the same conclusion